OPINION OF THE COURT
NYGAARD, Circuit Judge:
A jury convicted Mark Iafelice of possessing heroin with the intent to distribute. Iafelice moved for a post-verdict judgment of acquittal, which the district court granted, concluding that the evidence was insufficient for a reasonable jury to conclude beyond a reasonable doubt that Iafelice committed the crime. The government appeals from this order. The principal issue is whether there was sufficient evidence to convict Iafelice. We hold that a reasonable jury could conclude beyond a reasonable doubt that Iafelice possessed heroin with the intent to distribute it. We will vacate the district court’s order and will reinstate the judgment of conviction.
I.
Á court of appeals has jurisdiction under 18 U.S.C. § 3731 to review a district court’s post-verdict judgment of acquittal. In section 3731, “Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit.” United States v. Wilson, 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975). When a court sets aside a jury’s verdict of guilty and enters a judgment of acquittal, the government may appeal that decision. United States v. Schoenhut, 576 F.2d 1010, 1018 n. 7 (3d Cir.1978). The Constitution permits these appeals because double jeopardy is not implicated. There is no second trial for the same offense. The original verdict of guilty is reinstated. Wilson, 420 U.S. at 351-53, 95 S.Ct. at 1026 (appeal permitted when jury found defendant guilty but court dismissed indictment on ground of preindictment delay); United States v. Ceccolini, 435 U.S. 268, 270-71, 98 S.Ct. 1054, 1057, 55 L.Ed.2d 268 (1978) (appeal permitted when court found defendant guilty in bench trial but later vacated its verdict).
*94 Our standard in examining a post-verdict judgment of acquittal is the same as that which the trial court applied. United States v. Coleman, 811 F.2d 804, 807 (3d Cir.1987). We must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts, and drew rational inferences. Id. “The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.” Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). See United States v. Dixon, 658 F.2d 181, 188 (3d Cir.1981).
II.
This case arises from a “drug bust” at a Marriott Hotel following several months of investigation. John Guslavage, an undercover agent of the Drug Enforcement Administration, negotiated to buy a half-kilogram of heroin from two brothers, Richard and John Sinde. On the morning of the scheduled drug transaction, law enforcement agents set up surveillance at the parking lot of the Marriott. At about noon, they spotted a white Cadillac pull into the parking lot. Iafelice stipulated that he was both the driver and owner of the Cadillac. He had two passengers, John Sinde and Thomas Finn.
The movement of the Cadillac immediately made the agents suspicious. As soon as Iafelice entered the lot, he came to a complete stop for a moment, and then resumed driving at a very slow speed. As he passed a group of cars, he slowed down again. Approaching a surveillance agents car, he came to a near stop so that he and the other two occupants could turn their heads and look at the agent. He then drove past the agent’s car while the other two continued to watch the agent.
Iafelice drove a bit further and then stopped the car for a few moments, at which time an agent saw all three men in the Cadillac looking for something. The agent radioed the other agents in the vicinity that the drug dealers had arrived. After standing idle for a while, Iafelice pulled away, left the Marriott lot, but returned almost immediately. He again drove very slowly through the parking lot. Instead of parking in one of the many empty parking spaces, he drove to an area marked “Service Area” and backed his ear into the space closest to the hotel.
The three got out of the car. John Sinde talked with Iafelice and Finn briefly before he walked into the hotel. Iafelice and Finn got back into the Cadillac, Iafelice in the driver’s seat and Finn in the passenger’s. About a minute later, John Sinde emerged from the hotel and walked back to the car. As he approached, the trunk was popped open from inside the car. John Sinde reached into the open trunk and removed a brown camera bag containing half a kilogram of heroin. While Iafelice maneuvered the car to face the hotel, John Sinde placed the bag over his shoulder and went back into the hotel.
At the hotel, John Sinde met his brother Richard Sinde and together they waited for Agent Guslavage. The Sindes gave the bag to Guslavage, who unzipped it and found the heroin in a clear plastic bag. Richard Sinde said another package would arrive within an hour or two and that Gus-lavage could have four kilograms within five to ten days. At that moment, Richard Sinde’s beeper sounded. Telephone records indicated that the call came from Finn’s mobile phone inside Iafelice’s car.
Guslavage removed a small sample of heroin for testing. He asked the Sindes whether they trusted him to walk away with the sample, and Richard Sinde asked him in turn if Guslavage would trust Sinde with his mobile phone. Guslavage gave Richard Sinde the phone, left the lobby to test the heroin and give the arrest signal.
After Guslavage walked away, one of the Sinde brothers used the mobile phone to call the telephone in Iafelice’s car. At about that time, an agent watching the Cadillac saw Iafelice reach down and pick up the car phone. Shortly thereafter agents arrested the Sinde brothers, Finn and Iafelice. During the investigation leading to these arrests, Guslavage had never seen Iafelice or heard of him.
*95 The four were indicted for conspiring to possess with the intent to distribute more than four kilograms of heroin, in violation of 21 U.S.C. § 841(a)(1), and for possessing with intent to distribute about half a kilogram of heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Richard Sinde and Thomas Finn pleaded guilty, but John Sinde and Iafelice did not.[1]
At trial and after the government presented its cases, Iafelice moved under Federal Rule of Criminal Procedure 29(a) for a. judgment of acquittal. The district court denied the motion. Iafelice renewed his motion at the close of all the evidence. The court again denied it and allowed the jury to deliberate. The jury convicted John Sinde of both the possession and conspiracy charges. It acquitted Iafelice of the conspiracy charge, but convicted him of the possession charge. Iafelice moved for a post-verdict judgment of acquittal which the district court granted. The court concluded that the evidence was insufficient for a reasonable jury to find that the government had proven beyond a reasonable doubt each element of the possession offense.[2]
III.
A conviction for possession with intent to distribute drugs requires that the defendant knowingly and intentionally possessed the drugs with the intent to distribute them. United States v. Martorano, 709 F.2d 863, 866 (3d Cir.1983). The district court concluded that a reasonable jury could have inferred that Iafelice knew he was participating in some sort of criminal activity. The court also concluded that a reasonable jury could find that Iafelice paged Richard Sinde’s beeper while the Sinde brothers were meeting with Guslavage and that one of them returned the call to Iafelice. But it believed that Iafelice’s suspicious behavior and the telephone call to Richard Sinde could not reasonably lead to the inference that he knowingly possessed a controlled substance with the intent to distribute it.
We need not belabor that Iafelice’s suspicious driving activity, leading to the inference that Iafelice was performing counter-surveillance, supports the .further inference that Iafelice knew he was engaging in criminal activity. Nor is there any question that a reasonable jury could infer that Iafelice knew that the brown camera bag was in his trunk, that he opened or asked Finn to open the trunk for John Sinde, and that he paged the Sindes from Finn’s mobile phone and spoke with one of them during the drug transaction. The question, as articulated by the district court, is: Does the evidence support the inference that Iafelice knew the bag contained heroin and intended to distribute the drugs? No, the district court concluded, relying on two cases: United States v. Wexler, 838 F.2d 88 (3d Cir.1988) and United States v. Salmon, 944 F.2d 1106 (3d Cir.1991).
In Wexler the defendant Wexler challenged his conspiracy and aiding and abetting convictions contending that the evidence was- insufficient to show that he knew hashish was stashed in a yellow Ryder truck. The evidence showed:
a white Ford Sedan [ ] was driving by the surveillance area at about five miles per hour. The three occupants of the Ford Sedan, all readily visible, were looking around until the driver made eye contact with the surveillance agents. At this point, the car stopped in the middle of the street, backed into a nearby driveway . and pulled away in a fast manner, with *96 one of the occupants watching the agents until the car was out of sight..
838 F.2d at 89-90. Wexler rented the Ford Sedan and was identified as its driver. An operational CB radio was on the back seat of the car. The evidence also showed that at various times during the drug transportation Wexler was seen with and talking to the driver of the Ryder truck. After the Ryder truck was parked, they were seen in the white Ford Sedan conducting what appeared to be continuing countersurveillance activities.
Observing that Wexler neither owned nor rode in the Ryder truck, we reasoned that the evidence was insufficient to show a relationship between Wexler and a knowing conspirator to support an inference that Wexler knew of the drugs. We held that the evidence was insufficient to prove an essential element of the crime for which he was convicted: that Wexler knew the Ryder truck carried illicit drugs. We reasoned that the “evidence is just as consistent, for example, with a conspiracy to transport stolen goods, an entirely different crime.” Id.
In Salmon defendant Fitzpatrick challenged his conspiracy and aiding and abetting convictions on sufficiency grounds. Fitzpatrick drove an Oldsmobile with Salmon (a knowing conspirator), talked with him, performed countersurveillance and possessed communication and surveillance equipment. The government tried to distinguish Wexler on the basis of Fitzpatrick’s movements in the parking lot where the drug transaction occurred: when Salmon left the Oldsmobile to meet with Washington, Fitzpatrick left the car and opened its trunk; Salmon returned to the trunk area and at this point surveillance agents were unable to see anything; Salmon then walked back to meet with Washington again and after meeting with Salmon, Washington returned to Kuhn’s car with the cocaine. 944 F.2d at 1112, 1114.
The government contended that these movements, combined with other facts, could allow a reasonable jury to find beyond a reasonable doubt that Fitzpatrick knew that drugs were the object of the transaction. We rejected this argument, noting that it was “premised on the notion that the cocaine was located in the trunk of Fitzpatrick’s Oldsmobile. This notion, however, [was] unsupported by any established fact.” Id. at 1114-15. We then went further and stated in dictum that even assuming “the cocaine was in the trunk, the record contains no evidence that Fitzpatrick knew that the bag contained a controlled substance such as cocaine as opposed to anything else.” Id. at 1115. We are not bound by this statement in deciding the instant case. See Third Circuit Internal Operating Procedure 9.1.
Our inquiry is whether there was sufficient evidence to conclude that Iafelice had constructive possession of the drugs, and whether he had an intent to distribute those drugs. Constructive possession exists if an individual “knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons.” United States v. Blackston, 940 F.2d 877, 883 (3d Cir.1991) (quoting Black’s Law Dictionary 1047 (5th ed. 1979)). Constructive possession necessarily requires both “dominion and control” over an object and knowledge of that object’s existence. See United States v. Bell, 954 F.2d 232, 235 (4th Cir.) (“Of course, knowledge of the presence of the controlled substance is essential to an assertion of constructive possession.”), petition for cert, filed, No. 92-235 (Aug. 4, 1992); United States v. Roberts, 953 F.2d 351, 353 (8th Cir.1992) (“We have defined constructive possession as knowledge of presence plus control.” (internal quotation marks and citation omitted)).
The facts of Wexler and Salmon presented close eases. We believe the facts here are distinguishable from those in Wex-ler and Salmon, and they are sufficient to sustain the verdict against Iafelice. Two facts differentiate this case: (1) the presence and use of a beeper and telephone during the drug transaction, and (2) the undisputed presence of the drugs in Iafel-ice’s car.
*97 The use of the beeper to communicate with the Sinde brothers during the drug transaction provides some additional support for the inference that Iafelice knew he was involved in a drug transaction in view of the frequency with which beepers are used in the drug trade. See United States v. Ortiz, 966 F.2d 707, 714 (1st Cir.1992) (“Although possession of a beeper is not ipso facto proof of complicity in the drug trade, possession of such an item — on a defendant’s person at the scene of an ongoing drug deal — ‘could justifiably raise the eyebrows of a reasonable jury’ when viewed in light of the totality of the evidence.” (citation omitted)); United States v. Duarte, 950 F.2d 1255, 1260 (7th Cir. 1991) (“Also tying Duarte to the drug trade is his possession of a telephone beeper, which, in conjunction with the drug notes, could justifiably raise the eyebrows of a reasonable juror.”), cert. denied, — U.S. -, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992).
The truly distinguishing fact is Iafelice’s ownership and operation of the vehicle used to transport the drugs. Ownership and operation of the car are highly relevant facts that could reasonably have been considered by a jury in evaluating his knowledge of, and dominion and control over, the drugs. Common sense counsels that an owner and operator of a vehicle usually has dominion and control over the objects in his or her vehicle of which he or she is aware, and usually knows what is in that vehicle. Ownership and operation, however, do not exist in a vacuum; they must be considered in the context' of the surrounding circumstances, which may either reinforce or undercut, the significance of ownership and operation of the vehicle. See United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir.1990) (“In sum, knowing possession can be inferred from the defendant’s control over the vehicle in which the illicit substance is contained if there exists other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge.”).
In the context of the facts here, the jury’s inference that Iafelice had constructive possession of the heroin is supported by a “logical and convincing connection between the facts established and the conclusion inferred.” See United States v. McNeill, 887 F.2d 448, 450 (3d Cir.1989). Iafelice admitted that he owned and operated the car in which the drugs were transported; upon arriving at the hotel, Iafelice was observed driving the car in a suspicious manner that was consistent with the performance of countersurveillance; upon parking the car, John Sinde entered the hotel for a brief period before returning to the car for the drugs, conduct further consistent with countersurveillance prior to a drug transaction; when John Sinde returned to the car, the trunk was opened from the inside, either by Iafelice or with Iafelice’s knowledge and consent; finally, during the drug transaction, the Sindes were paged on a beeper from a phone in Iafelice’s car, and the return call was received by Iafelice.
The crucial additional fact that the drugs were transported in a car owned and operated by Iafelice (coupled with the other evidence recited above) provides the essential additional evidence necessary to distinguish this ease from the more limited facts of Wexler and Salmon, and to permit a jury to conclude beyond a reasonable doubt that Iafelice knew he was involved in a drug transaction and that, the camera bag contained the drugs for that transaction.[3]
We note that there has never been any contention that the evidence was insufficient to establish that Iafelice knew he was involved in some sort of criminal transaction. When this is combined with Iafelice’s knowledge of the heroin, the logical conclusion becomes that he knew the criminal transaction in which he was involved concerned heroin distribution.
*98 IV.
It is not unusual that the government will not have direct evidence. Knowledge is often proven by circumstances. A case can be built against the defendant grain-by-grain until the scale finally tips; and considering all the facts and drawing upon rational inferences therefrom, a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime for which he is charged. In Wexler and Salmon we held that facts there were insufficient to tip the scale. More evidence was needed to establish that the defendant knew drugs were involved in the crime. The circumstances here present the additional evidence needed to uphold a jury verdict of guilty. We hold that viewing the facts in the light most favorable to the government a reasonable jury could have found beyond a reasonable doubt that Iaf-elice knowingly possessed drugs with the intent to distribute them. We will vacate the district court’s judgment of acquittal and will remand with directions that the district court reinstate the jury’s verdict of conviction and proceed to sentencing.
Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ROTH, and LEWIS, Circuit Judges.

. The indictment also charged Richard Sinde with a conspiracy to possess with intent to distribute about one thousand pounds of marijuana. Because Richard Sinde pleaded guilty, the jury was not called upon to consider this charge at Iafelice’s trial. ’

. That the jury convicted John Sinde of both the possession and conspiracy charges while acquitting Iafelice of the conspiracy charge is irrelevant to our review. It does not show that Iafel-ice lacked the requisite intent. The jury could have found that the government failed to prove any of a number of elements of a conspiracy charge. Moreover, sufficiency of the evidence review “should be independent of the jury’s determination that evidence on another count was insufficient.” United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984).

. Clearly, the proof presented does not foreclose the possibility that Iafelice believed he was involved in a different type of criminal transaction. There is no requirement, however, that the inference drawn by the jury be the only inference possible or that the government’s evidence foreclose every possible innocent explanation. United States v. Sandini, 888 F.2d 300, 311 (3d Cir.1989).