UNITED STATES of America, Plaintiff,

v.

Kenneth EDWARDS, Defendant.

Crim. A. No. 92–69 LON.

United States District Court,
D. Delaware.

March 9, 1993.

---

Thomas V. McDonough, U.S. Attorney's Office, Wilmington, DE, for plaintiff.

Raymond M. Radulski, Wilmington, DE, for defendant.

## OPINION

LONGOBARDI, Chief Judge.

Defendant Kenneth Edwards ("Edwards") has moved for judgment of acquittal or a new trial.

## I. BACKGROUND

After a jury trial on December 21 and 22, 1992, the Defendant was convicted of Counts I and II of an Indictment.[1] Count I charged the Defendant with knowingly conspiring to violate Title 18, United States Code, Sections 1029(a)(2) and 1029(c)(1), by knowingly using unauthorized access devices, with intent to defraud and gain property in excess of $1,000 during a period of less than one year, thereby affecting interstate commerce. Count II charged the Defendant with knowingly using and knowingly aiding in the use of an unauthorized access device, with intent to defraud, thereby gaining property in excess of $1,000 during a period of less than one year, and affecting interstate commerce. Subse-

---

**1.** The co-defendant, Veronica Edith McDonald ("McDonald") pled guilty to Count I of the In- dictment on December 9, 1992.

quent to the trial, the Defendant timely filed a motion for judgment of acquittal, Docket Item ("D.I.") 38, and a motion for a new trial, D.I. 37.

## II. DISCUSSION

### A. MOTION FOR JUDGMENT OF ACQUITTAL

Pursuant to Federal Rule of Criminal Procedure 29(c), Edwards moves for judgment of acquittal on two grounds. First, Edwards asserts that the jury verdict is counter to the evidence at trial. According to Edwards, the evidence clearly showed that he did not commit credit card fraud, nor did he aid or abet anyone else in such offense, nor did he conspire to commit such offense. Second, Edwards contends that the evidence did not establish a violation of the offense charged in the Indictment. Specifically, Edwards asserts there was no proof that he obtained property, nor aided anyone else in obtaining property, valued in excess of $1,000 as a consequence of the transaction at issue.

Under the standard for examining a post-verdict motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the jury verdict and presume that the jury properly evaluated credibility of the witnesses, found the facts and drew rational inferences. *United States v. Iafelice*, 978 F.2d 92, 94 (3d Cir.1992) (citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir.1987)). "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Iafelice*, 978 F.2d at 94 (quoting *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)). The Court must consider the evidence and the inferences which may be drawn from it "in the light most favorable to the prosecution" and must deny such a motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The essential elements of the offense charged in Count I are: (1) that the Defendant knowingly became a member of a conspiracy to commit access device fraud; (2) that the credit card is an access device; (3) that the Defendant or a co-conspirator knowingly used one or more unauthorized access devices during any one year period and in so doing obtained anything of value amounting to $1,000 or more; (4) that the use was with an intent to defraud; and (5) that interstate commerce was affected by the use of the unauthorized access device. The essential elements of the offense charged in Count II are: (1) that the credit card is an access device; (2) that the Defendant knowingly used or did knowingly aid in the use of one or more unauthorized access devices during any one year period and in so doing obtained anything of value amounting to $1,000 or more; (3) that the Defendant acted with an intent to defraud; and (4) that interstate commerce was affected by the use of the unauthorized access device.

The Court concludes that the jury verdict was not contrary to the evidence at trial. First, the evidence showed that a CoreStates credit card issued to Eleanor Myers, account number 4262 4100 4010 8454, was used at the Automobile Association of America ("AAA") office in Newark, Delaware on July 24, 1992 to obtain $3,000 in American Express Travelers Cheques, and a few minutes later, to obtain an additional $1,000 in American Express Travelers Cheques. Eleanor Myers testified that the travelers cheques were purchased without her authorization, and the signatures on the accompanying paperwork (Government Exhibits ("G.X.") 1, 2, 3 and 4), were not the true signatures of Eleanor Myers and her husband, John Myers, the other cardholder on her account. United States Secret Service ("USSS") Special Agent Thomas Hennesy testified that his investigation revealed that AAA received authorization to process these transactions from CoreStates' headquarters in Philadelphia, Pennsylvania, thus satisfying the element of affecting interstate commerce.

As the first ground for his motion for judgment of acquittal, Edwards specifically argues that the evidence failed to show that he committed, aided or abetted another in committing or conspired to commit credit card fraud. AAA employees Teresa Wilkins

("Wilkins") and Elizabeth Daly ("Daly") made in-court identifications of Edwards as the person who accompanied McDonald to AAA on July 24, 1992. Wilkins and Daly testified that after McDonald presented the Eleanor Myers credit card and signed the accompanying paperwork for the $3,000 in travelers cheques, the Defendant asked for an additional $1,000 in travelers cheques, again using the Eleanor Myers credit card as payment. Edwards then signed the requisite purchase order (G.X. 3) in the name "John Myers." In addition to the testimony of Daly and Wilkins that the Defendant signed this form, Delaware State Police handwriting expert Georgia Carter compared the Defendant's known handwriting exemplars and the signature of John Myers on G.X. 3, and concluded at trial that it was Edwards who signed "John Myers" on G.X. 3. The evidence also showed that after the Defendant signed this form, authorization was obtained for the purchase of $1,000 in travelers cheques, and those travelers cheques were given to the Defendant.

Wilkins further testified that she received a telephone call at AAA shortly after 6:00 p.m. on July 24, 1992 from a man who wanted to know what time AAA was closing that evening. She testified that the man would not state the purpose of his visit to AAA. Shortly before closing time, at 7:00 p.m., the Defendant and McDonald came into the AAA office. During the ensuing twenty to thirty minute conversation, Wilkins recognized that Edwards' voice was similar to the speaker from the earlier telephone call.

Daly further testified that after McDonald and Edwards asked to buy travelers cheques, McDonald was uncertain as to what name she should use for completion of the accompanying paperwork. Edwards then said "come on Eleanor," after which McDonald supplied the name Eleanor Myers. Wilkins and Daly recalled that McDonald seemed "out of it" at times and had some initial difficulty in completing the paperwork. In contrast, however, the Defendant was very alert and evidenced no difficulty in completing the paperwork.

In evaluating what evidence existed to support the conspiracy conviction, the Court finds that the record is replete with references that place McDonald and Edwards together at the AAA office, that they were cooperating in effecting the commission of the crime and that both of them utilized the same credit card to obtain travelers cheques. When McDonald decided to leave the AAA office without signing all of the $3,000 in travelers cheques, the Defendant assured the AAA employees that "I'll make sure she signs them." Wilkins further testified that Edwards, in an effort to expedite the transactions, told her that he was purchasing the travelers cheques to pay for a cruise that was departing later that evening. Wilkins testified that, in her experience at AAA, cruises generally must be paid for thirty days in advance. Daly testified, however, that she saw the Defendant in the parking lot of the AAA office only three days later, on July 27, 1992. As further evidence of the conspiracy, USSS Agent Richard Brown testified that, when he went to the facility where Edwards was being held to pick him up for a court appearance in this case on September 9, 1992, as Edwards was being brought to a car in which McDonald was sitting, Edwards noticed McDonald and said "no talking" to her, and then placed his index fingers to his lips to reemphasize this directive. The Court finds the totality of the evidence sufficient to support a jury finding that the Defendant committed, aided and abetted another in committing and conspired to commit credit card fraud.

As the second ground for his motion for judgment of acquittal, Edwards claims that the evidence did not show that he obtained or aided anyone else in obtaining property which was valued in excess of $1,000. The jury was instructed that "the Government must also prove that the Defendant or a co-conspirator obtained anything of value worth at least $1,000 during a one year period.... The Government must prove that the Defendant or a co-conspirator received $1,000 worth of goods, services, or money during a twelve month period." Reference to Title 18, United States Code, Section 1029(e)(1) provides, in the definition of "access device," that the $1,000 threshold can be satisfied by showing that the card was used "to obtain

money, goods, services, or any other thing of value."

The evidence at trial showed that the Defendant and McDonald used the Eleanor Myers credit card to obtain first $3,000 in travelers cheques, and then $1,000 in travelers cheques. Authorization was obtained by AAA from CoreStates to give these travelers cheques to Edwards and McDonald, who both left with the travelers cheques. Travelers cheques fall within the above definition as "other thing[s] of value." Title 18, United States Code, Section 1029 does not require the jury to find that the travelers cheques were negotiated, but only that they were obtained. Accordingly, the Court concludes that the evidence supports a jury finding that the Defendant obtained property, or aided another in obtaining property, valued in excess of $1,000 as a consequence of the transaction at issue.

## B. MOTION FOR A NEW TRIAL

Pursuant to Federal Rule of Criminal Procedure 33, Edwards moves for a new trial on three grounds. First, the Defendant asserts that the Court erred in denying Defendant's motion to strike the testimony of Georgia Carter ("Carter"), the Government's handwriting expert, on the ground that her opinion testimony was not based on reasonable professional probability or certainty. Second, the Defendant asserts that the Court erred in admitting over defense objection a photo display containing the photograph of James King because the photo display was not furnished to the Defendant pursuant to his pretrial discovery requests and motions. Third, the Defendant asserts that the Court erred in denying Defendant's motion to limit identification testimony by Government witnesses who were initially shown a faxed photograph of the Defendant.

■■ Motions under Rule 33 are addressed to the sound discretion of the trial court. *United States v. Iannelli,* 528 F.2d 1290, 1292 (3d Cir.1976). The Court's role in considering a motion for a new trial is limited because the "jury's verdict ... is entitled to presumptive validity and the trial court should exercise its authority in this area very sparingly and only in the most exceptional cases when it is convinced that a gross injustice will have been done if it fails to act." *United States v. Gross,* 375 F.Supp. 971, 973–74 (D.N.J.1974) (citations omitted), *aff'd,* 511 F.2d 910 (3d Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). *Accord United States v. Clemons,* 658 F.Supp. 1116, 1119 (W.D.Pa.1987) ("power to grant a new trial should be exercised sparingly and granted only when the evidence preponderates heavily against the verdict"), *aff'd,* 843 F.2d 741 (3d Cir.), *cert. denied,* 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988). The conduct of trial, including the admission or exclusion of evidence, is left to the broad discretion of the trial judge. *See United States v. Driggs,* 823 F.2d 52, 54 (3d Cir.1987); *Stich v. United States,* 730 F.2d 115, 117 (3d Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984). A motion for a new trial must be granted, however, if there is a substantial probability that trial error could have had a substantial influence on the jury's decision. *United States v. Clark,* 617 F.Supp. 693, 694 (E.D.Pa.1985) (citing *Government of Virgin Islands v. Bedford,* 671 F.2d 758, 762 (3d Cir.1982)), *aff'd without opinion,* 791 F.2d 922 (3d Cir.1986).

### 1. *Admission of Testimony of the Government's Handwriting Expert*

■■ Edwards first contends that the Court improperly denied his motion to strike the testimony of Carter, the Government's handwriting expert, on the basis that her opinion was not based on "reasonable professional probability or certainty." Defendant's contention of error is without merit.

The Third Circuit recently rejected a defendant's challenge to the district court's admission of testimony of the Government's handwriting expert. *United States v. McGlory,* 968 F.2d 309, 345 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992). In *McGlory,* the handwriting expert testified at trial that there were numerous similarities between signatures in the defendant's name on receipts introduced by the Government and a handwriting exemplar of the defendant. *Id.* at 345–46. The defendant contended that the trial court abused its discretion in admitting

the testimony because the expert could not make a positive statement that the handwriting on all of the receipts was that of the defendant. *Id.* at 346. The Third Circuit held that the district court did not abuse its discretion in admitting the testimony. *Id.* The court explained that

> [u]nder Federal Rule of Evidence 702, the expert testimony need only be helpful to the jury. Expert testimony as to the similarities in handwriting is generally admissible. *See United States v. Cairns*, 434 F.2d 643, 644 n. 3 (9th Cir.1970). This is so even if the handwriting expert is not absolutely certain that the handwriting is that of the defendant. *See United States v. Herrera*, 832 F.2d 833, 837 (4th Cir.1987); *United States v. Fleishman*, 684 F.2d 1329, 1336–37 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Any issue regarding the certainty of [the expert's] testimony goes to the weight given that testimony and could be tested by cross-examination.

*Id.* *Accord United States v. Galvin*, 394 F.2d 228, 229 n. 1 (3d Cir.1968) (opinion of handwriting expert in a criminal case is not inadmissible because it expresses a probability; any reservations in the expressed opinion go to the weight of the evidence and are a determination for the jury to make).

Similarly, in *Herrera*, the court held that an expert opinion regarding handwriting need not be based upon absolute certainty in order to be admissible. *Herrera*, 832 F.2d at 837. There, the district court refused to strike as "speculative" the testimony of the Government handwriting expert that he had a "high degree of belief" that the handwriting on a receipt was that of the defendant. *Id.* The Fourth Circuit upheld the district court's admission of the expert's opinion testimony. *Id.*

In the case *sub judice*, Carter testified that she has been employed as a handwriting examiner with the Delaware State Police for six and one-half years, she has examined thousands of handwriting exemplars, she has previously testified as an expert witness in federal court and her methods are professionally accepted in her field. Carter testified that she compared over one hundred known handwriting samples of the Defendant in the name John Myers to the questioned signature of John Myers on G.X. 3, the AAA receipt for the purchase of $1,000 in American Express Travelers Cheques. As a result of her examination, she was able to render an expert opinion that the questioned signature of John Myers on G.X. 3 was signed by the Defendant. During redirect examination, Carter was asked "[i]n your expert opinion, how certain are you that Kenneth Edwards signed the name John Myers [on G.X. 3]?" Carter replied that it was her opinion that Edwards signed the name John Myers on the document in question. Moreover, the Court observed no equivocation by Carter during her testimony as to her opinion that the handwriting was that of Edwards.

The Court's decision refusing to strike Carter's testimony did not prejudice the Defendant, because Defendant's attorney thoroughly cross-examined Carter and fully availed himself of the opportunity during closing argument to discredit her expert testimony for its alleged lack of certainty. The Court further instructed the jury to "give [the expert opinion] such weight as you think it deserves.... [I]f you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, you may disregard the opinion entirely." Accordingly, the Court concludes that its ruling denying Edward's motion to strike Carter's testimony was proper and a new trial is not warranted on the basis of the admission of Carter's expert opinion.

### 2. *Admission of Photo Display*

Edwards next contends that the Court erred in admitting over defense objection a photo display containing the photograph of James King ("King") because the photo display was not furnished to Edwards pursuant to his pretrial discovery requests and motions. Defendant's contention of error is without merit.

■ Initially, the Court notes that the discovery requests submitted by Edwards to the Government pursuant to Fed.R.Crim.P. 16 and *Brady v. Maryland*, 373 U.S. 83, 83

S.Ct. 1194, 10 L.Ed.2d 215 (1963), reveal no request for the photo display containing the photograph of King. Specifically, the requests included, *inter alia*, "[a] statement as to the date, time and location of any and all line-ups, photographic or show-up identifications (or attempted identifications) of the defendant(s) in connection with the above case." D.I. 39, Attachment A at ¶ 11.[2] In response to Edwards' discovery request, the Government provided a copy of the photo lineups of Defendants Edwards and McDonald. The other individual, King, was not a defendant in the instant case. Plainly, a photo display containing the photograph of King does not fall within the parameters of this discovery request.

▪ Moreover, the Government submits that even if Edwards had requested the photo lineup which included King, Fed.R.Crim.P. 16 would not require its production. The Government further submits that the photograph of King could not possibly have constituted *Brady* or exculpatory evidence, as King is much older than the Defendant, by approximately twenty years, King wore glasses, unlike Edwards, and there was no evidence that King was present on July 24, 1992, the date of the commission of these offenses. The Court agrees.

▪ On cross-examination of USSS Agent Richard Brown ("Brown"), Defendant's attorney elicited information regarding a person arrested at a subsequent date along with the Defendant and McDonald. According to Brown, that person was King. Previously, the Government had not elicited testimony from any witnesses regarding King.[3] In fact, when defense counsel brought up this line of

questioning, the prosecutor objected to the introduction of any information regarding King because it was beyond the scope of his direct examination of Brown. At a sidebar conference outside the hearing of the jury, the prosecutor further objected to introduction of evidence regarding King's arrest a month after the transaction at issue in this case because it was not relevant. The Court overruled the Government's objection to the extent that Edwards was permitted to elicit testimony identifying a third person arrested with Edwards and McDonald. Upon further questioning by the defense, Brown gave a physical description of King, describing him as a black male, approximately five feet, eight inches tall, with gray/black hair and dark skin. Brown testified that King appeared to be in his early fifties, although Brown did not believe he was that old. The Government did not conduct redirect examination of Brown related to King or his arrest.

Again on cross-examination by defense counsel, USSS Special Agent Thomas Hennesy ("Hennesy") testified that King was arrested at the same time as the Defendant and McDonald. Defense counsel asked Hennesy if Brown's description of King was accurate, and Hennesy concurred that it was a fair description of King. When counsel attempted to elicit specific information concerning King's arrest unrelated to the offenses with which Edwards was charged, the Government again renewed its objection to this line of testimony. The Court ruled at sidebar that, to the extent that the testimony sought to be elicited lacked any connection to the offense with which Edwards was charged, it was immaterial and inadmissible. The Court permitted testimony, however,

---

**2.** Within three days of serving the Government with his discovery requests, Edwards moved the Court for discovery under Fed.R.Crim.P. 16, D.I. 5, and for notice of the Government's intention to use discoverable evidence, D.I. 7. The Court held a conference and heard arguments from counsel for both parties on the motions. The Court granted discovery to the extent that such discoverable information had yet to be provided by the Government. D.I. 23. The Court denied as moot the motion for notice of intention to use discoverable evidence, D.I. 7, based on the representations of Edwards' attorney at the conference and the Government's response that it intended to use any evidence provided in discovery

and reserved the right to use evidence which may later be provided in discovery, D.I. 18. D.I. 23.

**3.** The Court notes that the only previous time during the trial that King was mentioned was by Edwards' attorney during his cross-examination of Carter, the Government's handwriting expert. There, defense counsel asked Carter if she was provided with any handwriting samples from a person named James King for comparison to the John Myers signature on G.X. 3. Carter replied in the negative. The Government did not redirect the expert witness on this issue.

concerning King to the extent that it went to misidentification during the incident at AAA on July 24, 1992.

Upon resuming his questioning, defense counsel asked Hennesy if any lineup-type arrest photographs were taken of King in connection with his arrest and whether he performed any photo lineups utilizing King's photograph with either of the AAA employees who had previously testified. Hennesy confirmed that the Delaware State Police took such photographs, and that he had shown a photo lineup containing King's photograph to Daly, one of the AAA employees who identified Edwards in court. On redirect examination of Agent Hennesy, the prosecutor referred to the photo lineup containing King's picture. King was wearing glasses at the time of the photograph. Hennesy was asked if any of the AAA employees picked out King as the person who came into the AAA office on July 24, 1992 with McDonald, and Hennesy responded in the negative. The Government moved for the admission of the photo lineup and defense counsel objected. The Court held a sidebar at which it ruled that because the issue of misidentification was raised by the defense, and because the photo lineup illustrated the differences between the appearance of the Defendant and King, the photo lineup containing King's picture was admissible as proper rebuttal evidence.

Evidence concerning King was injected into the trial by the Defendant. Based on the conduct of the defense at trial, the Court finds that there was no unfair surprise, and its ruling admitting the photo display which included King was proper once the Defendant opened the line of inquiry regarding possible misidentification of the Defendant. Accordingly, a new trial is not warranted on the basis of the admission of the photo display containing King's photograph.

### 3. *Admission of Identification Testimony*

Edwards' final basis for a new trial is that the Court improperly refused his motion to exclude identification testimony by Government witnesses who were initially shown a faxed photograph of the Defendant purportedly committing an unrelated fraudulent credit card transaction. Defendant's contention of error is without merit.

Two AAA employees, Wilkins and Daly, were Government witnesses at Edwards' trial and made in-court identifications of him. At the outset, the Court notes that when the faxed photograph of Edwards was sent from CoreStates to AAA on or about August 20, 1992, Wilkins was on maternity leave and thus did not see the photograph. Her eyewitness identification at trial, therefore, could not in any way have been tainted by a photograph which she never saw. With regard to Daly's eyewitness identification testimony, the Court held a hearing outside the presence of the jury to resolve Edward's motion *in limine* during which counsel for both sides conducted a voir dire examination of Daly.

The test for proving an improperly suggestive identification is based upon the totality of circumstances, and the inquiry is whether the identification procedure was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253. The defendant has the burden of demonstrating that a confrontation procedure is impermissibly suggestive. *Reese v. Fulcomer*, 946 F.2d 247, 259 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992). The existence of some suggestiveness, by itself, does not require the exclusion of this testimony. *United States v. Stevens*, 935 F.2d 1380, 1390–91 (3d Cir.1991) (citing *United States v. Dowling*, 855 F.2d 114, 117 (3d Cir.1988), *aff'd*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). The asserted suggestiveness of identification procedures must be considered in the totality of circumstances, considering the following five factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty dem-

onstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382–83; *Stevens*, 935 F.2d at 1391; *United States v. Nguyen*, 793 F.Supp. 497, 506 (D.N.J.1992). Moreover, in order to establish that a pretrial confrontation was unduly suggestive, the defendant must first show that the Government's agents arranged the confrontation or took some action during the confrontation which singled out the defendant. *Reese*, 946 F.2d at 259 (citing *Stevens*, 935 F.2d at 1390 n. 11 (citation omitted)).

Here, there is no contention that Government agents arranged for Daly to view the faxed photograph of Edwards. In fact, the faxed photograph was sent to the AAA office by CoreStates, and Daly was shown the faxed photograph by her manager at AAA. Thus, there is no allegation of any Government involvement concerning Daly's exposure to the faxed photograph.

Daly testified outside the presence of the jury that she saw the Defendant at the AAA office on July 24, 1992 for approximately thirty to forty minutes from a distance of about two feet. The lighting in that area was good and there were no visual obstructions. Daly paid close attention to the Defendant during these transactions involving a substantial sum of money, $4,000. Daly had a second opportunity to see the Defendant, from several feet away, during daylight hours on July 27, 1992, in the AAA parking lot.

The faxed photograph was shown to Daly within one month of July 24, 1992. At the time Daly viewed the faxed photograph, she recognized the Defendant, but there were no suggestions made to her by any other person to assist in this identification. Daly testified, however, that the faxed photograph was of such poor quality that it played no part in her in-court identification. Rather, she testified that her in-court identification of Edwards was based upon her recollection of the events of July 24, 1992. Daly's exact words on cross-examination were "the photocopies [faxes] were not clear enough.... I got it [her identification] from the 24th." Daly's

testimony as to her identification of the Defendant was unequivocal.

After hearing Daly's voir dire testimony, the Court ruled on whether the evidence in the record warranted the conclusion that Daly's identification was tainted for due process purposes. Based on the totality of the circumstances, the Court found that the faxed photograph was of such poor quality that positive identification from the faxed photograph standing alone, would have little value in the identification of the Defendant, and therefore, it was not suggestive. The Court further found that Daly's independent identification of Edwards from more detailed photographs, *i.e.*, from the photo lineup presented to her by Agent Hennesy, and Daly's independent in-court identification of Edwards, were based on the opportunity Daly had to observe Edwards on July 24, 1992. Considering the totality of the circumstances, including, *inter alia*, the proximity of the Defendant, the lack of obstructions and that Daly had ample time to view the Defendant's face, the Court concluded that there was an independent basis for Daly's identification of Edwards. Finally, the Court also considered that the likelihood of misidentification was slight because there was other evidence in the case positively identifying the Defendant as the person in the AAA office on July 24, 1992. Consequently, the Court admitted Daly's testimony as to her identification of the Defendant.

Upon reexamining Daly's identification of Edwards under the totality of the circumstances factors in *Biggers,* the Court is confident that Daly's in-court identification of the Defendant was reliable despite her prior exposure to the faxed photograph of the Defendant purportedly committing an unrelated fraudulent credit card transaction. *See Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382–83. The Court having determined that the identification process in this case possessed sufficient aspects of reliability, the Court concludes that it properly admitted Daly's identification testimony at trial. Accordingly, a new trial is not warranted on the basis of the admission of Daly's identification testimony.

## III. CONCLUSION

For the reasons stated herein, the Court denies the Defendant's motions for judgment of acquittal and a new trial. An order in accordance with this opinion shall be entered.