Leroy CARHART, M.D., on behalf of himself and his patients obtaining abortions, Plaintiff,

v.

Don STENBERG, in his official capacity as Attorney General for the State of Nebraska; Mike Munch, in his official capacity as County Attorney for Sarpy County and as a representative of all county attorneys in Nebraska; Gina Dunning, in her official capacity as Director of Regulation and Licensure of the Nebraska Department of Health and Human Services; and Charles Andrews, M.D., in his official capacity as Chief Medical Officer of Nebraska, Defendants.

No. 4:97CV3205.

United States District Court,
D. Nebraska.

Aug. 10, 1998.

Simon Heller, David Gans, The Center for Reproductive Law & Policy, New York, NY,

Jerry M. Hug and Alan G. Stoler, Omaha, NE, for Leroy Carhart, M.D.

Don Stenberg, Atty. Gen., Steve Grasz, Deputy Atty. Gen., James D. Smith, Asst. Atty. Gen., Lincoln, NE, for Don Stenberg, Gina Dunning, Charles Andrews.

Tamra L. Walz, Deputy Sarpy County Attorney, Papillion, NE, for Mike Munch.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Having prevailed in his 42 U.S.C. § 1983 effort to stop enforcement of Nebraska's partial-birth abortion law, Dr. Carhart now requests (filing 47) that he be compensated for the attorney fees and expenses that he has incurred as a result of this litigation. *See* 42 U.S.C. § 1988(b) (Cum.Supp.1998). I will grant his motion in part and award fees and expenses of $46,855.29.

### I. Background

The plaintiff, a doctor who performs late-term abortions on nonviable fetuses, sued the defendants in an effort to obtain declaratory and injunctive relief prohibiting the defendants from enforcing Nebraska's "partial-birth" abortion ban. He claimed the law violated his constitutional rights and those of his patients.

A contested hearing on the plaintiff's request for preliminary injunction was held in 1997. After that evidentiary hearing and extensive briefing, I granted the plaintiff preliminary injunctive relief to the extent the law was applied to him. *Carhart v. Stenberg*, 972 F.Supp. 507 (D.Neb.1997). In 1998 we held a trial. After more extensive briefing, I declared Nebraska's law unconstitutional as applied to Dr. Carhart and his patients, and I permanently enjoined enforcement of the law against the doctor and others like him. *Carhart v. Stenberg*, 11 F.Supp.2d 1099 (D.Neb. 1998).

The plaintiff now requests a total award of $57,210.29, consisting of $44,507.50 in fees and $12,702.79 in costs. (Decl. of Heller

¶ 12.) Five lawyers swear they spent a total of 351 hours working on this case for the plaintiff.

Simon Heller, lead plaintiff's counsel and litigation director for the Center for Reproductive Law & Policy (CRLP), a public interest law firm in New York, asserts that he spent 102.5 hours of work on this case that should be compensated for by a payment of $17,825.00; that is, 63.5 hours of direct legal work should be compensated at a rate of $250 per hour and 39.0 hours of travel time should be compensated at a rate of $50.00 per hour. (Decl. of Heller ¶ 8 & Ex. A.) Mr. Heller also seeks $12,472.59 in expenses that have been paid by CRLP. (*Id.* ¶ 10.)[1] D. Stuart Meiklejohn, a partner with the New York firm of Sullivan & Cromwell, states that a rate of $250 per hour is reasonable in the New York market for a person of Mr. Heller's experience. (Decl. of Meiklejohn ¶¶ 7–9.)

David Gans, a former lawyer with CRLP, also asserts that he spent 148.20 hours on this case. (Decl. of Gans ¶ 8.) Mr. Gans is now a law clerk to a federal appeals court judge, but he is relatively inexperienced in the practice of law. He states that he should be compensated at a rate of $100.00 per hour, or $14,820 in total. (*Id.*) He has not charged for travel time.

Janet L. Crepps, an experienced lawyer with CRLP, asserts that she spent 27.5 hours of time on this case which should be compensated for by a payment of $4,140. Ms. Crepps' claim is premised on the following: $180 per hour times 18.5 hours for direct legal work and 9.0 hours times $90.00 per hour for travel time. (Decl. of Crepps ¶¶ 3 & 4.)

Jerry M. Hug, a Nebraska lawyer who represented Carhart through the offices of Alan G. Stoler, P.C., submits a claim for $6,662.70. (Aff. of Hug ¶ 8.) Hug states that he spent 64.2 hours on this case, and claims that he should be compensated at a rate of $100 per hour. (*Id.*)[2] He also claims to have

---

**1.** Paragraph 10 of Mr. Heller's declaration requests $12,742.59 in non-taxable costs in the first sentence and $12,472.59 in the third sentence. Exhibit C to that declaration shows a third figure of $12,742.39 in costs. I have assumed that $12,472.59 is the correct amount, as that is the

figure to which Mr. Hug's expenses of $230.20 were added to arrive at a total cost request of $12.702.79, as stated in paragraph 12 of Mr. Heller's declaration.

**2.** There is an error in Mr. Hug's affidavit; that is, 64.2 hours at a rate of $100 per hour equals

incurred $230.20 in expenses. (*Id.*) Mr. Hug is a relatively inexperienced lawyer.

Alan G. Stoler, the principal in the firm of Alan G. Stoler, P.C., submits a claim for $1,290. (Aff. of Stoler ¶ 7.) Mr. Stoler states that he spent 8.6 hours on this file, and that he is entitled to a rate of $150 per hour. Mr. Stoler is an experienced Nebraska lawyer.

The state defendants have responded. They acknowledge that the plaintiff is a prevailing party, but submit that the plaintiff should receive no more than $35,454,25, consisting of $24,636.50 in fees and $10,817.75 in expenses. Specifically, they assert that: (1) Mr. Heller's hours are reasonable, but his rate of $250 per hour should be reduced to no more than $115 per hour; (2) Mr. Gans' hours should be reduced from 148.2 hours to 113 hours and his rate should be reduced to no more than $90 per hour; (3) Ms. Crepps' hours should be reduced from 27.5 hours to 17 hours and her rate should be reduced to no more than $115 per hour; (4) Mr. Hug's hours should be reduced from 64.2 to 31.1 hours and his rate should be reduced to no more than $90 per hour; (5) Mr. Stoler's hours should be reduced from 8.6 hours to 4 hours and his rate should be reduced to no more than $115 per hour; (6) costs should be reduced by $1,885.04.

Mike Munch, the Sarpy County Attorney, has also responded. He asserts that he was only a nominal party to the litigation and that it would be unjust to award fees against him. Moreover, Mr. Munch argues that if he is liable for attorney fees, the amount of such liability should be very limited given the role he played in this litigation.

## II. Discussion

Section 1988(b) provides that a successful plaintiff who sues under 42 U.S.C. § 1983 may be awarded a reasonable attorney fee to be paid by the defendants. 42 U.S.C. § 1988(b). The method for determining whether a successful party is entitled to attorney fees under § 1988(b) is well known. *See, e.g., Orr v. Nelson*, 874 F.Supp. 998, 1005 (D.Neb.) (setting forth three-step procedure for deciding whether to grant attorney fees to successful litigant who challenged Nebraska's decision not to use federal funds to

pay for abortions when the pregnancy was the result of rape or incest), *aff'd*, 68 F.3d 479 (8th Cir.1995) (table). "I must (1) determine whether [the plaintiff is a] prevailing part[y], and, even if so, whether an award of attorney fees is otherwise inappropriate; (2) determine the 'lodestar'; and (3) determine whether any adjustments in the lodestar are warranted, and, if so, make such adjustments." *Id.*

Since neither the plaintiff nor the defendants argue that the lodestar should be adjusted, only the first two inquiries must be addressed here. I turn to those twin tasks next.

First, the plaintiff is clearly a prevailing party. He obtained virtually all the relief that he sought. Moreover, I find nothing inappropriate about awarding attorney fees against the state defendants. As to Mike Munch, however, the question is slightly more difficult.

■ Mr. Munch argues that he was a nominal party, and this constitutes a "special circumstance" for which I should use my discretion to deny an award of fees against him. It is true that Munch played a minor role in the presentation of the defense. It is also true that under "special circumstances" a prevailing plaintiff may be denied a fee. *See, e.g., Hatfield v. Hayes*, 877 F.2d 717, 719 (8th Cir.1989) (recognizing "special circumstances" exception).

However, Mr. Munch actively supported the constitutionality of Nebraska's ban against partial-birth abortions and he made it clear that he would prosecute Dr. Carhart unless the law was declared unconstitutional. Because Munch played an active, albeit relatively minor, role in the defense of this case and because he threatened to prosecute Carhart if given the chance, Munch's role does not provide a "special circumstance" that would make an award of attorney fees inappropriate. *Id.* at 720 (judicially created "special circumstances" exception to award of attorney fees under civil rights attorney fees statute should be narrowly construed).

---

$6,420, and when that sum is added to the expenses of $230.20, the total is $6,650.20, rather

than $6,662.70, as claimed by Hug in his affidavit.

Nor is there any basis for limiting Mr. Munch's exposure to some fraction of the attorney fee award. While the state defendants are surely responsible for the threatened enforcement of the unconstitutional law, so is Mr. Munch. He made clear that if given a chance, he would undertake to investigate and prosecute Dr. Carhart. Hence, there is no basis for concluding that Munch ought to have his liability reduced as compared with the state defendants merely because he relied on them to present most of the evidence and argument in defense of the unconstitutional law and threatened enforcement of that law. Therefore, all the defendants will have joint and several liability for the fee award.

Second, I next calculate the "lodestar" (the market rate per hour multiplied by the hours reasonably expended). The market rate for experienced lead counsel like Mr. Heller in the relevant Omaha and Lincoln, Nebraska, market for non-jury legal services challenging a state statute regulating abortion was $105 per hour before 1996. *See, e.g., Orr,* 874 F.Supp. at 1005 (awarding $105 rate to Mr. Heller in similar litigation). *See also El Tabech v. Gunter,* 869 F.Supp. 1446, 1458 (D.Neb.1994) (awarding $105 rate to lead counsel in complex non-jury prisoner civil rights litigation), *aff'd sub nom. Jensen v. Clarke,* 94 F.3d 1191, 1203–04 (8th Cir.1996).

■ I agree that the $105 rate is now outdated in the relevant market. As a matter of fact, from my review of recent submissions in other cases, I am persuaded that the lead counsel rates in the relevant economic market for non-jury cases like this one have increased to $115. I also am persuaded that a fee $115 per hour provides a sufficient incentive to attract competent lead counsel in cases like this one.

I add, however, that such a rate should be awarded for all legal work including travel time since that is the practice in the relevant market. *See, e.g., Craik v. Minnesota State Univ. Bd.,* 738 F.2d 348, 350 (8th Cir.1984)

(" '[L]awyers invariably charge their clients for travel time, and usually at the same rate they charge for other time ....' ") (quoting *Henry v. Webermeier,* 738 F.2d 188, 194 (7th Cir.1984) (Posner, J.)). *See also Perotti v. Seiter,* 935 F.2d 761, 764 (6th Cir.1991) (decision to award counsel travel time at the usual rate was within the discretion of the trial court because the trial court has greater familiarity with the local practice).

To the extent that it is argued that I should award a "national" rate for Mr. Heller, I disagree. While Mr. Heller is a very skilled lawyer, I am satisfied that a rate of $250 per hour or the like is not necessary to attract counsel willing and able to handle this type of litigation. "Most courts consider the forum community the proper yardstick, so an award for out-of-town counsel will not be based on the rates in their usual place of work." Alan Hirsch & Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* 21 (Federal Judicial Center 1994) (collecting cases) (footnote omitted) (hereinafter *"Awarding Attorneys' Fees "*).

■ The four other plaintiff's lawyers served as a supporting cast for Mr. Heller. Before 1996, a reduced rate of $85 per hour for supporting or non-lead counsel would have been appropriate in a case like this, particularly where, as here, none of the supporting lawyers took on responsibility equal or similar to that undertaken by the lead lawyer. *See, e.g., Tabech,* 869 F.Supp. at 1457 (awarding various non-lead counsel the $85 rate). However, I also agree that the $85 rate for supporting counsel in non-jury cases like this one has now increased to $90 in the relevant market, and supporting counsel should be compensated accordingly.[3]

■ That multiple supporting counsel were necessary is proven by the fact that at one hearing, the Nebraska Attorney General, his chief deputy, an assistant attorney general, and a deputy county attorney were pres-

---

**3.** I appreciate that some of the supporting lawyers (like Mr. Stoler) customarily bill at rates higher than $90 in the relevant market. Indeed, Mr. Stoler is a well regarded and very experienced trial lawyer in the relevant market. Nevertheless, all of the supporting lawyers took on roles that were significantly less important and responsible than the role played by Mr. Heller. This case warranted only one lead counsel, and Mr. Heller clearly was that person. The market would not have compensated supporting counsel at lead counsel rates when they did not perform that task.

ent for the defendants. I also note that the briefing, argument, and trial responsibilities for the state defendants were split between a deputy attorney general and an assistant attorney general. Consequently, there is no doubt that the number of lawyers used by the plaintiff in this case was reasonable.

In addition, and once again, I find that the $90 rate should be applied without reduction for travel time because that is the practice in the relevant market. But I also find that a higher or "national" rate is not necessary to attract competent supporting counsel for cases like this one.

■ Regarding whether the 351 hours claimed by the lawyers were reasonably expended, the issue " 'is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.' " *Tabech*, 869 F.Supp. at 1456 (quoting *Awarding Attorneys' Fees* at 24–25 n. 116 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir.1992), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993))). This was a sensitive and difficult case on a very controversial subject requiring difficult judgment calls on the part of the plaintiff's lawyers.

For example, Ms. Crepps personally came to Nebraska to file and serve the complaint and to be available on short notice should the court decide to hear the plaintiff's request for a temporary restraining order. While it might have been just as appropriate to have local counsel handle these matters, I cannot fault the plaintiff's legal team for sending an experienced lawyer in the field of abortion rights. Given the possible impact of prosecution on Dr. Carhart and his patients, it is especially inappropriate to minutely second-guess the billing judgment of his lawyers when the total hours claimed are so reasonable.

Still further, resolution of the case involved a great deal of important legal work. The case required a contested hearing on a preliminary injunction followed months later by a trial. Conflicting testimony of numerous medical experts was presented and critiqued at both the preliminary injunction hearing and the trial. Preparation required travel to Massachusetts and Tennessee to interview or depose experts. Competent advocacy required the preparation of voluminous briefs and close monitoring of other similar cases. The good and hard work of all the lawyers (including defense counsel) are reflected in the court's opinions in this case which exceed 140 pages in length.

While one might question a number of individual billing entries, the aggregate hours expended on this case represents very efficient work. Accordingly, I find that the 351 hours claimed by the plaintiff's counsel should be used to calculate the fee. I also find that expenses claimed were reasonable and necessary, customarily billed to clients in the relevant economic market, and properly compensable as a component of a fee award. *Tabech*, 869 F.Supp. at 1455–56 (citing *Awarding Attorneys' Fees* at 18–19 & n. 83).

In summary, I calculate the lodestar this way: (1) for Mr. Heller's fee, 102.5 hours × $115 = $11,787.50; (2) plus fees for all other counsel, 248.5 hours × $90 = $22,365.00; (3) plus out-of-pocket expenses or costs = $12,702.79. Because neither the plaintiff nor the defendants request adjustments to the lodestar, the fee award is thus $46,855.29. I find and conclude that such an award is fair, reasonable, and reflective of the fee that would have been charged in the Omaha and Lincoln, Nebraska, market for a non-jury case challenging the constitutionality of a state statute regulating abortions.[4]

IT IS ORDERED that:

1. The plaintiff shall recover from the defendants, jointly and severally, an attorney fee award (including expenses) of $46,855.29.

2. The plaintiff's motion (filing 47) is granted in part and denied in part in accordance with this opinion.

---

4. In *Evans v. Kelley*, a "partial-birth abortion" case like this one, the defendants recently stipulated to, and the district court approved, an award for attorney fees and costs of $150,000. *Evans v. Kelley*, No. 97–CV–71246 (E.D.Mich. Apr. 17, 1998) (Ex. A to Pl.'s Mem. Br. Supp. Pl.'s Mot. Attys' Fees & Costs).