UNITED STATES of America

v.

Edward BASLEY, a/k/a Beeb

Edward Basley, Appellant.

No. 08–4319.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Dec. 16, 2009.

Filed: Dec. 18, 2009.

Karen L. Grigsby, Esq., Bernadette A. McKeon, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Ellen C. Brotman, Esq., Jennifer E. Canfield, Bryan M. Shay, Esq., Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Appellant.

Before: FISHER, HARDIMAN, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judge.

Appellant Edward Basley appeals three of his convictions arguing the evidence presented was insufficient to support the verdicts. He further appeals the District Court's determination that his sentence qualified for an enhancement because it found he had a prior conviction, and Basley contends such a judge-made finding violates the Sixth Amendment. Additionally, he appeals the District Court's sentence as unreasonable. For the following reasons, this Court will affirm the District Court's judgment and sentence.

### I.

Because we write solely for the parties, we will only address those facts necessary to our opinion.

Darren Cameron began cooperating with the government after police discovered a significant amount of drugs at his residence in September 2004. He told the officers he had obtained nine ounces of cocaine from Basley, for which he still owed $6,250, and the rest from Robert Wright, for which he owed $11,000. A Drug Enforcement Agency ("DEA") task force provided Cameron with funds to repay Wright and Basley. Between 2004 and 2005, Cameron met with Wright thirteen times and Basley once to repay his debts. During each meeting Cameron wore a recording device.

In April 2005, Cameron recorded a conversation during which Basley offered to sell him cocaine, but Cameron declined. On May 2, 2005, Cameron called Wright to purchase cocaine, but Wright was unable to satisfy the request. Moments later, Basley called Cameron offering to sell him the requested amount. Later that day, Cameron met Basley who fronted him cocaine in exchange for a promise to pay him $3,000. Subsequently, Cameron wore a recording device while meeting Basley twice to repay him for the fronted cocaine. In the meetings, Basley discussed issues related to drug distribution and told Cameron a story about when police impounded his car containing a .45 caliber gun (known as a Glock), cocaine base, and marijuana.

When Basley retrieved his car, his contraband was still inside.

On July 8, 2005, Basley called Cameron, who was in the presence of a DEA task force officer, to inform him he had cocaine.[1] At the officer's direction, Cameron went to meet Basley on Clapier Street in Philadelphia, Pennsylvania. Basley invited Cameron into his Chevy Avalanche and showed him five kilos of cocaine, wrapped in tan tape, inside a black duffle bag. Basley told Cameron that he planned to give two kilos to his brother. Subsequently, Cameron reported what transpired and the DEA task force set up surveillance at two locations: (1) Clapier Street and Wayne Avenue, and (2) on 5343 Darrah Street in Philadelphia, where Basley had been seen during a previous surveillance.

Officer Sarris surveyed 5343 Darrah Street. At around 3:00 p.m. on July 8, 2005, he saw Basley and another male arrive in an Avalanche. Basley was holding a black duffle bag in his right hand. Basley used a key to open the door to 5343 Darrah Street, and then, still holding the duffle bag, he and the other male went inside. Basley was inside the house for a little over two hours, during which a woman and three men arrived separately. All four knocked to gain entrance. Officer Sarris testified that he saw Basley leave, accompanied by two men. Officer Sarris admitted that no attempt was made to determine the identity of the other subjects. Then, several officers entered the premises to execute a search warrant.

The house at 5343 Darrah Street has a basement, a main floor with a combination living room/dining room area and a kitchen, and a second floor with two bedrooms. Officer Rehr searched the basement and recovered a black duffle bag, which Cameron and Officer Sarris identified as Basley's. Inside there was one kilo of cocaine wrapped in tan tape, and one large Ziploc bag which contained five smaller bags, each containing 125 grams of cocaine.[2] An officer recovered three empty tan wrappers from the basement garbage can and Cameron identified photos of those wrappers as the same wrapping he saw on the kilos in the black duffle bag.

Office Sarris searched the stairwell area leading to the basement. Just inside the doorway of the stairwell he found a box of baking power, two digital gram scales with drug residue, a learner's permit for Basley,[3] and other drug paraphernalia. Another officer found a bag near the staircase containing various drug paraphernalia, as well as two smaller bags of what was later determined to be 107 grams of cocaine base (crack).[4]

Office Sarris also searched the living room/dining room area and found various documents and photographs of Basley's, including, among other things: (1) a photograph of Basley and Wright, (2) a letter addressed to Basley with tally work on the back, (3) a receipt with Basley's name on it, (4) an envelope addressed to Basley, (5) a personal card addressed to Basley, (6) an auto-insurance policy for Basley addressed

---

1. This call was not recorded, but Cameron put the call on speaker so the officers present could hear his conversation with Basley.

2. This cocaine, totaling 1,623.8 grams, is the basis for Count Six of the indictment.

3. At trial the government played a video of the search. In it, one could see the learner's permit was issued to Shahee C. Williams.

When Basley was arrested officers recovered a driver's license with the name of Shahee C. Williams, under Basley's photograph, from Basley's wallet. Thus, the learner's permit belonged to Basley because it served as identification for his alias.

4. The 107 grams of cocaine base formed the basis of Count Five.

to 5343 Darrah Street, and (7) an envelope from the Pennsylvania Department of Transportation addressed to Edward Basley. A DEA officer found a nine-millimeter Beretta with a round in the chamber and obliterated serial numbers under baby clothes in a red wicker basket. The basket was on the floor in a seating area near the kitchen table. There were no fingerprints on the gun or magazine. Senior Narcotics Agent John Cohen testified, as an expert witness, that it was consistent with his experience that drug dealers kept loaded firearms in their homes to protect themselves and their drug enterprise. He conceded a "sloppy" person might also keep a loaded gun in the house.

Officer Arnold searched the upstairs bedrooms. In the front bedroom, Officer Arnold found items on a dresser including: (1) a Pennsylvania identification card with Basley's name and address on it, (2) two men's watches, (3) a chain with a large diamond-encrusted "B" on it, (4) a Comcast bill for 5343 Darrah Street in Basley's name, (5) a Visa card in Basley's name, (6) Basley's social security card, (7) an application for a Visa card in Basley's name, (8) a letter regarding a Mastercard addressed to Basley at Clapier Street, and (9) a handwritten note addressed to "B." In a dresser drawer, the officer found a loaded Glock Model 3045 semi-automatic handgun and an extended magazine. Men's T-shirts were in the dresser drawer with the gun. No fingerprints were recovered from the Glock or the magazine.[5]

Basley was arrested on November 7, 2004 when police officers pulled him over in the Avalanche. Officers conducted an inventory search and discovered a stolen, loaded Taurus pistol[6] and a small quantity of narcotics in the cup holder.

On February 12, 2007, Basley and seven co-defendants went to trial facing a twenty-one count Superseding Indictment for drug and gun charges.[7] Basley was named in seven counts: Counts Two and Four charged Basley with cocaine distribution in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); Count Five charged Basley with possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Count Six charged Basley with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); Count Seven charged Basley with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and Counts Eight and Twenty charged Basley with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Before the jury returned its verdict, Basley made an oral motion for judgment of acquittal as to Count Seven, which was denied. The jury then convicted Basley as to Counts Four, Five, Six, Seven, Eight and Twenty, but acquitted him with respect to Count Two. On March 2, 2007, Basley filed a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Although Basley reserved the right to supplement this motion, he never did, and it was denied.

The District Court sentenced Basley to 300 months' incarceration, followed by ten years of supervised release, a $3,000 fine, and a $600 assessment. Basley filed a timely notice of appeal.

---

5. The Glock and the Beretta formed the basis for Counts Seven and Eight.

6. The Taurus formed the basis of Count Twenty.

7. Basley was tried separately.

## II.

The District Court had subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

This Court reviews de novo grants or denials of Rule 29 motions to acquit for insufficient evidence. *United States v. Bobb,* 471 F.3d 491, 494 (3d Cir.2006). If a defendant challenges the sufficiency of the evidence, but did not file a timely Rule 29 motion, then this Court reviews the sufficiency of the evidence for plain error. *United States v. Powell,* 113 F.3d 464, 466–67 (3d Cir.1997).

Basley moved for judgment of acquittal under Rule 29 twice: (1) on Count Seven on February 16, 2007, and (2) on all the convictions on March 2, 2007. The government contends that because the March 2, 2007 motion was particularly vague, merely stating that "the evidence presented by the government during its case in chief was insufficient to sustain the convictions," it is insufficient to preserve the challenges raised.

Basley's Rule 29 motion is sufficient to preserve these issues for review. Rule 29 only requires that a defendant "move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict." Fed.R.Crim.P. 29(c)(1).[8] It does not indicate that the defendant's motion must be specific. Moreover, as this Court has only applied the plain error standard when a defendant failed to file a Rule 29

motion completely, to apply it when the motion is vague would be a marked expansion. *See Powell,* 113 F.3d at 467 n. 5.[9] Basley's motion, though vague, is sufficient to put the government on notice that he contests the sufficiency of the evidence. Therefore, this Court will review Basley's challenges to the sufficiency of the evidence de novo, because he filed a timely Rule 29 motion. Fed.R.Crim.P. 29(c)(1).

When reviewing a jury verdict for sufficiency of evidence, this Court reviews the evidence in the light most favorable to the government and must sustain the verdict if any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Cunningham,* 517 F.3d 175, 177 (3d Cir.2008).

This Court reviews sentences for abuse of discretion by examining the procedural and substantive reasonableness of the sentence imposed. *United States v. Tomko,* 562 F.3d 558, 567–68 (3d Cir.2009) (en banc). This Court exercises plenary review over constitutional challenges to a defendant's sentence. *United States v. Walker,* 473 F.3d 71, 75 (3d Cir.2007).

## III.

Basley challenges the sufficiency of the evidence for three of his convictions: (1) for Count Five, possession with intent to distribute cocaine base, commonly known as crack; (2) for Count Seven, for knowing possession of a firearm in furtherance of a drug trafficking crime; and (3) Count Eight, for knowing possession of a firearm

---

8. The Supreme Court recently issued an order amending Rule 29 to allow defendants a longer period of time to file a Rule 29 motion. As it is not yet in effect, we analyze this case under the prior rule. U.S. Order 09–18.

9. Although this Court has not considered the question, other courts have held that in a Rule 29 motion a defendant merely needs to put the government on notice that he is challeng-

ing the sufficiency of the evidence. *See United States v. South,* 28 F.3d 619, 627 (7th Cir.1994) (noting that Rule 29 does not require anything more than notice that defendant was "contesting the sufficiency of the evidence"); *United States v. Gjurashaj,* 706 F.2d 395, 399 (2d Cir.1983) (finding that defendants "need not specify the grounds of the [Rule 29] motion in order to preserve a sufficiency claim for appeal").

as a felon. We will address each conviction in turn.

## A.

■ Basley contends the government's evidence was insufficient to support his conviction for possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). This conviction carries a mandatory minimum of ten years, which is enhanced to twenty years if the convicted felon has a prior felony conviction. 21 U.S.C. §§ 841(b)(1)(A)(viii). "A conviction for possession with intent to distribute drugs requires that the defendant knowingly and intentionally possessed the drugs with the intent to distribute them." *United States v. Iafelice*, 978 F.2d 92, 95 (3d Cir.1992). The government admits that there is no direct evidence Basley actually possessed the cocaine base, but argues there is overwhelming evidence of constructive possession.

> "Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both dominion and control over an object and knowledge of that object's existence."

*Cunningham*, 517 F.3d at 178 (citing *Iafelice*, 978 F.2d at 96). Notably, dominion and control are not established by "mere proximity to the drug, or mere presence on the property where it is located." *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir.1996) (quoting *United States v. Brown*, 3 F.3d 673, 680 (3d Cir.1993)).

Whether a defendant had dominion and control over drugs found in a house hinges in part on his relationship to that property. If a defendant is an owner or lessee of a premises where contraband is found, that fact "logically tend[s] to support a conclusion that [they] had constructive posses-

sion" of any contraband on the premises. *United States v. Introcaso*, 506 F.3d 260, 271 (3d Cir.2007); *Jackson v. Byrd*, 105 F.3d 145, 150 (3d Cir.1997). But, this Court previously found that evidence a person had a key to and resided in a house where drugs were recovered, but was not on the lease, was insufficient to support a finding that she had constructive possession of the contraband in the house. *Brown*, 3 F.3d at 680–82. Moreover, we noted her conduct was "consistent with that of someone with access to or residing at the Brown residence, but with no control over the drugs ... therein." *Id.* at 682.

Basley argues the government's evidence is insufficient to support his conviction under *Brown* because it only establishes that he had contact with 5343 Darrah Street prior to the discovery of drugs therein. Indeed, Basley is neither a lessee nor owner of the 5343 Darrah Street property. Although the government offered extensive evidence of Basley's contacts with the 5343 Darrah Street property, that evidence is insufficient on its own to establish that he had dominion and control over the contraband found inside the property. *See Brown*, 3 F.3d at 684. The government, however, also offered other circumstantial evidence to support its constructive possession claim, including: (1) recorded conversations indicating that Basley was engaged in the drug trade, (2) physical and testimonial evidence that Basley carried a large quantity of cocaine, from which cocaine base is created, into the home the same day the cocaine base was recovered, and (3) evidence of the presence of tools used to transform cocaine into cocaine base in close proximity to the cocaine and the cocaine base. This evidence distinguishes Basley from the *Brown* defendant because evidence that Basley was in the drug trade and

brought cocaine into 5343 Darrah Street is inconsistent with someone who has "access to or [is] residing at the ... residence, but [who does not have] control over the drugs ... therein." *Id.* at 682. Therefore, considering all the circumstantial evidence in a light most favorable to the government, we conclude a reasonable jury could infer that Basley had dominion and control over the cocaine base found on the premises. *Cunningham,* 517 F.3d at 177.

Nevertheless, to make out a conviction for possession with intent to distribute drugs, the government must establish that Basley intended to distribute the drugs he constructively possessed. *Iafelice,* 978 F.2d at 95. The government offered extensive evidence through recorded conversations and Cameron's testimony that Basley was engaged in the drug trade, though none of that evidence explicitly referenced him distributing cocaine base. Additionally, the officers recovered materials used in drug distribution, including a box of clear vials and clear plastic bags, near both the black duffle bag and the cocaine base. Based on evidence that Basley was distributing drugs, had access to distribution tools, and had constructive possession of a substantial quantity of cocaine base, a reasonable jury could infer that Basley intended to distribute the cocaine base. Therefore, we find that there is sufficient evidence to support Basley's conviction for Count Five of the indictment.

### B.

■ Basley challenges the sufficiency of the evidence supporting his conviction for knowingly possessing a firearm in furtherance of a drug trafficking crime. Title 18 U.S.C. § 924(c)(1)(A) imposes a mandatory consecutive sentence of at least five years for any person who, in furtherance of a drug trafficking crime, "possesses a firearm." 18 U.S.C. § 924(c). To support a conviction under this statute the government had to prove beyond a reasonable doubt that Basley (1) is guilty of an underlying drug crime, (2) knowingly possessed a firearm, and (3) knowingly possessed a firearm in furtherance of the drug trafficking crime.

Having already convicted Basley of distributing cocaine, which he does not appeal, a reasonable jury could conclude Basley was guilty of an underlying drug crime. This appeal hinges on whether there was sufficient evidence that Basley knowingly possessed the Beretta semi-automatic handgun, found in a wicker basket in the downstairs seating area, or the Glock semi-automatic weapon, found in a dresser drawer in the front bedroom, to further his drug trafficking activities.

The government did not present any direct evidence tying Basley to these guns or indicating Basley knew that these guns were in the house. Therefore, the government needed to establish that Basley constructively possessed these weapons. *See Cunningham,* 517 F.3d at 178. The government's extensive circumstantial evidence that Basley had control over the residence is insufficient to support an inference that he had dominion and control over the contraband therein. *Brown,* 3 F.3d at 680–81. However, that evidence, paired with the recorded conversation during which Basley told Cameron he owned a Glock and the fact that the Glock was found in a drawer, with men's clothing, surrounded by Basley's intimate personal effects, is strong circumstantial evidence that Basley knowingly possessed that gun. Thus, considering the evidence in a light favoring the government, a reasonable jury could infer that Basley knowingly possessed the Glock.

The evidence relating to the Beretta in the wicker basket is more tenuous. There was no direct evidence the Beretta belonged to Basley, and the gun was not

near his personal effects. The government's primary circumstantial evidence suggesting that Basley knowingly possessed the Beretta is comprised of evidence that Basley had some control over the residence and the testimony of a senior narcotics agent who noted that firearms are integral to the drug trade. However, the agent's testimony that guns are integral to the drug trade does not speak to whether Basley knowingly possessed this gun, and evidence that a person has control over a residence is insufficient to support an inference that they had dominion and control over the contraband therein. *Brown*, 3 F.3d at 680–81. Therefore, a reasonable jury could not infer that Basley knowingly possessed the Beretta. This is particularly true because four people entered 5343 Darrah Street on July 8, 2005 prior to the search, any of whom could have hidden the gun. Accordingly, we will limit our analysis to the Glock.

To support a conviction for possession of a firearm in furtherance of a drug trafficking crime, the totality of the "evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir.2004). This Court considers the following nonexclusive factors to determine whether a gun was possessed "in furtherance":

> "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found."

*Id.* As Basley points out, in circumstances where guns are found in the immediate vicinity of drugs or drug paraphernalia, this Court has found that proximity alone is sufficient evidence for a rational juror to conclude the gun was used to further drug trafficking. *United States v. Iglesias*, 535 F.3d 150, 157 (3d Cir.2008). But, as the Glock was on the second floor, it was not proximate to the drugs found in the basement. The Glock, however, implicates other listed factors. The Glock is a semiautomatic weapon, which is a type of weapon rarely used primarily for self-defense. It was loaded, indicating it was ready to fire. Additionally, it had been reported stolen. Although none of those factors standing alone directly indicate the Glock was used to further drug trafficking, together they support the inference that the gun was used to further drug trafficking. Thus, a reasonable jury could rely on these factors to conclude that the Glock was used to further Basley's drug trafficking activities. Accordingly we will affirm Basley's conviction based on Count Seven for possessing a firearm in furtherance of a drug trafficking crime.

Because we conclude a reasonable jury could infer that Basley knowingly possessed the Glock, we will also affirm Basley's conviction based on Count Eight, that he knowingly possessed a firearm as a felon.

## IV.

The District Court sentenced Basley to a statutory mandatory minimum term of 300 months' imprisonment, followed by ten years of supervised release, for his conviction under a number of drug and gun offenses. Basley's advisory guideline range for his convicted offenses is 168–210 months under the Sentencing Guidelines. Normally, a conviction for possession of cocaine base with an intent to distribute (Count Five) carries a mandatory minimum sentence of ten years. 21 U.S.C. §§ 841(b)(1)(A)(viii). Because Basley had a prior felony drug conviction, however, this mandatory minimum is enhanced to twenty years. *Id.* His conviction under

Count Seven, possession of a firearm in furtherance of a drug trafficking crime, carries a statutory minimum of five years' imprisonment to run consecutively with the twenty-year term. 18 U.S.C. § 924(c)(1)(A)(i). As a result, Basley has a mandatory minimum sentence of 300 months. U.S. SENTENCING GUIDELINES MANUAL § 5G1.1(a). Basley challenges his sentence as invalid under the Sixth Amendment and unreasonable. We will address Basley's constitutional argument first.

### A.

■ Basley contends that his sentence violates his Sixth Amendment rights because (1) the District Court imposed an enhanced mandatory minimum sentence based on the finding, made by a judge rather than a jury, that Basley had a prior drug conviction, and (2) the District Court determined, rather than the jury, that Basley's prior conviction qualified as a sentencing-enhancing prior conviction.

The Sixth Amendment right to a trial by jury extends to sentencing, *United States v. Booker*, 543 U.S. 220, 226, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), but the Sixth Amendment is not violated when a court, as opposed to a jury, finds that a defendant has a prior conviction, *Almendarez–Torres v. United States*, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Although the holding of *Almendarez–Torres* has been questioned by the Supreme Court, it continues to bind this Court. *United States v. Vargas*, 477 F.3d 94, 105 (3d Cir.2007). Therefore, the District Court did not violate Basley's Sixth Amendment rights by finding a prior conviction existed for the purpose of sentencing enhancement.

Basley further contends that even if the District Court was permitted to determine that he had a prior conviction under *Almendarez–Torres*, his Sixth Amendment rights were violated when the District Court imposed an enhanced sentence based on that conviction without a jury finding that the *nature* of Basley's prior conviction qualified him for such an enhancement. The District Court is statutorily authorized to enhance the mandatory minimum on Count Five only if Basley has a prior *felony drug* conviction. 21 U.S.C. § 841(b)(1)(E)(iii). Thus, in order to enhance Basley's sentence, the District Court had to find both that Basley had a prior conviction, and that the conviction was eligible for enhancement.

Basley's argument tries to parse the unparseable: if a court is permitted to find the fact that a defendant had a prior conviction, it would make no sense that it would be unable to find what that prior conviction was for. Moreover, this argument is undermined by Supreme Court precedent. The Supreme Court permits a sentencing court to look at the fact of conviction, the statutory definition of the crime, and the charging papers and jury instructions of the prior offense to determine whether a prior conviction qualifies for sentence enhancement under another statute. *Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); *Taylor v. United States*, 495 U.S. 575, 601, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Here, the District Court merely looked at the fact of conviction and the statutory elements of the convicted crime to determine that Basley's prior conviction was a prior felony drug conviction. Therefore, it did not err by finding that Basley had a prior felony drug conviction, which made his sentence enhanceable.[10]

---

**10.** In an unpublished opinion, this Court previously rejected the distinction between a court finding of a prior conviction, and a

finding of the nature of the prior conviction. *United States v. Randolph*, 236 Fed.Appx. 777, 778 (3d Cir.2007).

## B.

■ Basley also challenges his sentence as both procedurally and substantively unreasonable. This Court reviews the overall sentence for abuse of discretion, *Tomko*, 562 F.3d at 566, by engaging in a procedural and substantive review of the sentence, *see United States v. Lessner*, 498 F.3d 185, 203 (3d Cir.2007). Procedurally, the District Court must (1) accurately calculate the applicable Sentencing Guidelines range; (2) formally rule on the motions of both parties and state on the record whether the court is granting a departure and how that departure affects the guidelines range; and (3) consider all the factors under 18 U.S.C. § 3553(a) [11] and adequately explain the chosen sentence in a manner that allows for meaningful appellate court review of the reasonableness of the sentence. *See Gall v. United States*, 552 U.S. 38, 49–51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007); *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir.2006). If the District Court's procedure is without error, then we consider the substantive reasonableness of the sentence based on the totality of the circumstances. *Tomko*, 562 F.3d at 566. Notably, the party challenging the sentence has the burden to demonstrate unreasonableness at both stages of review. *Id.*

It is clear to us from the record that the District Court followed the procedural guidelines, accurately calculated Basley's sentence, and gave meaningful consideration to the relevant § 3553(a) factors. Moreover, the court did not abuse its discretion by imposing a sentence of 300 months' imprisonment. Therefore, we conclude the sentence was procedurally and substantively reasonable.

## V.

For the foregoing reasons, we will affirm the District Court's judgment and sentence in all respects, except with regard to its finding that the evidence was sufficient to establish that Basley knowingly possessed the Beretta.

---

11. Section 3553(a) instructs the sentencing court to consider (1) the nature of the offense and the defendant's personal characteristics; (2) the need for the sentence to punish the defendant, deter similar conduct by the defendant and the public, protect the public from the defendant, and rehabilitate the defendant; (3) the types of sentences available; (4) the sentencing guidelines; (5) any policy statements of the Sentencing Commission; (6) the objective of uniformity in criminal sentencing; and (7) the need to provide restitution.