OPINION OF THE COURT
VAN ANTWERPEN, Circuit Judge.
A federal grand jury returned a four-count indictment against Defendant-Appellant Rashaan Bates (“Bates”). A jury *245 found Bates guilty on three of the four counts. Bates appeals his conviction only as to count I, possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1). The District Court denied Bates’s motion for judgment of acquittal because it found the facts were distinguishable from this Court’s prior decisions regarding constructive possession, namely United States v. Brown, 3 F.3d 673 (3d Cir.1993) and United States v. Jenkins, 90 F.3d 814 (3d Cir.1996).
Wholly apart from the fact that the District Court improperly distinguished Brown and Jenkins, there is virtually nothing in this record that even suggests that Bates constructively possessed the heroin, and the District Court erred in concluding otherwise. In broad summary, Bates was seen on but one occasion exiting the house where he had, until recently, lived and to which he still had a key. He then crossed the street and shortly thereafter sold a few packets of crack cocaine, leaving that location a few minutes later and returning to it the following day, when he was arrested. Nothing connects Bates or the packets of crack cocaine he was selling to the heroin or heroin paraphernalia or anything else found in the house. We will, therefore, reverse his conviction on Count I, vacate the sentence, and remand for resentencing.
I. Facts
Officers Richard Woertz and Brian Myers of the Philadelphia Police Department (“PPD”) met with a registered confidential informant (“Cl”) at a staging area on October 7, 2008. The officers instructed the Cl to attempt to purchase drugs on the 1400 block of Lardner Street. The Cl met Woertz just north of Lardner Street and he was given prerecorded buy money. A third PPD officer, Harold Toomer, conducted surveillance of the area that evening by sitting in a vehicle further down the block. Toomer saw Bates exit a residence at 1474 Lardner Street, cross the street, and sit on the steps of 1471 Lardner Street. Shortly thereafter Toomer witnessed the Cl walking down Lardner Street. The Cl stopped to talk to Bates on the steps of 1471 Lardner Street. Toomer saw an exchange between the Cl and Bates, where the Cl gave Bates cash, and Bates gave the Cl an object from his coat pocket. Toomer testified that Bates left the area a short time after the Cl left. The Cl then returned to the staging area where he gave Woertz a red plastic packet that contained crack cocaine.
The next day, October 8, 2008, fourteen PPD officers, including Myers and Toomer, went to execute a search warrant on 1474 Lardner Street. Toomer again saw Bates sitting on the steps of 1471 Lardner Street, this time with another individual, and recognized Bates as the person that sold drugs to the Cl the previous day. Toomer and another officer, Marshall Kelly, approached the two men and searched them. Toomer’s frisk of Bates revealed an Intratec 9mm firearm, which Toomer secured. Kelly proceeded to search Bates and discovered twelve blue packets of crack cocaine in a clear plastic bag. Bates had no money on his person. In addition to the twelve packets of cocaine, the officers found a key on Bates. The officers tested the key on 1474 Lardner Street and it operated the lock.
The house located at 1474 Lardner Street was vacant at the time of the officers’ search, but Myers found over 100 grams of heroin, as well as heroin paraphernalia, in a bedroom on the second floor. Some of the heroin was in bulk form, while the rest was in 360 white glas-sine packets stamped “Chicago.” The heroin paraphernalia included grinders, a scale, a spoon, a strainer, and a credit card with the name “Yajaira Batista.” The *246 credit card was covered in heroin residue. The officers discovered a tally book inside the residence, and the words and names in the tally book were largely in Spanish. Myers also found unused blue, white, and clear glassine packets, which were different than the blue packets found on Bates. Bates’s fingerprints were not found in the room containing the drugs, no evidence placed him in the bedroom containing the drugs, he had no heroin on his person, and no heroin residue was found on his clothes or person.
Subsequent investigation revealed that Bates’s driver’s license identified 1474 Lardner Street as his place of residence. Bates’s mother testified that she and Bates had lived in the house at 1474 Lardner Street between August 2007 and September 2008. The property manager for 1474 Lardner Street testified that, to the best of his knowledge, the building was vacant on the day Bates was arrested, October 8, 2008, and had no legal tenants, although tenants were scheduled to move in on November 1, 2008. In the middle of September, after Bates and his mother moved out, the property manager checked 1474 Lardner Street and found it “empty.” At that time the building contained no furniture, trash, or personal possessions.
Bates was charged by a grand jury with four counts: (I) possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1); (II) possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); (III) distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1); and (IV) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).
At trial, the Government called PPD Detective Andrew Callaghan as an expert witness. Callaghan gave his opinion regarding the evidence recovered from 1474 Lardner Street. Callaghan testified that the street value of the heroin seized was over $200,000 and that, in his experience, such a large amount of heroin is kept in a secure location to prevent it from being either detected by law enforcement, or stolen by other individuals. Similarly, such a large volume of heroin led Callaghan to believe an organization involving more than one person was trafficking the drug. Callaghan also testified that members of drug organizations usually do not conduct sales out of locations where they store their drugs because it could draw the attention of law enforcement, as well as “street thugs” looking to steal the stored drugs.
The jury convicted Bates on counts I, II and IV, but acquitted him on count III. Count III was the charge of distribution of crack, arising from the sale to the Cl on October 7, 2008. After the trial, Bates filed a motion for judgment of acquittal under Fed.R.Crim.P. 29, which was denied by the District Court. Bates filed a timely notice of appeal, seeking review only of the District Court’s denial of the motion for judgment of acquittal regarding count I.
II. Jurisdiction
The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.
III. Standard of Review
In reviewing a motion for judgment of acquittal made pursuant to Fed.R.Crim.P. 29, a district court must “ ‘review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.’ ” United States v. Smith, 294 F.3d 473, 476 (3d Cir.2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir.2001)). Thus, a verdict will be sustained “if there is substantial *247 evidence to uphold the jury’s decision.” United States v. Boria, 592 F.3d 476, 480 (3d Cir.2010). This is a “particularly deferential standard of review” and reviewing courts “must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [the court’s] judgment for that of the jury.” Id. (alteration and omission in original) (quoting United States v. Brodie, 403 F.3d 123, 133 (3d Cir.2005)). On appeal this court exercises plenary review and applies the same standard a district court would use in deciding the motion. Id.
IV. Discussion
The two prior decisions of this Court on point are United States v. Brown, 3 F.3d 673 (3d Cir.1993) and United States v. Jenkins, 90 F.3d 814 (3d Cir.1996). The District Court relied on these decisions in formulating its opinion, and the parties rely upon them in this appeal.
A. United States v. Brown
In Brown, this Court reversed the district court’s order denying the defendant’s motion for judgment of acquittal. Defendant Ama Baltimore, along with two others, was charged and convicted on four counts relating to possessing drugs with the intent to distribute. Brown, 3 F.3d at 675-76. The police were acting on a tip that drugs were located at Brown’s residence, and they were searching the home for drugs when Baltimore arrived at the home. Id. at 675. Baltimore was in the process of opening the front door with her key to the residence when she was arrested. Id. The police brought Baltimore inside and questioned her regarding a pair of shorts found in an upstairs sewing room. Id. Baltimore admitted the shorts were hers, and when the police removed a switchblade knife from the pocket of the shorts, she also admitted the knife was hers. Id. Then Baltimore stated “but you can’t arrest me because I am in my own house.” Id. Heroin, crack, and cocaine were discovered throughout the house, in areas that included the kitchen and the bedrooms, but not the sewing room where Baltimore’s shorts were discovered. Id.
To demonstrate Baltimore’s constructive possession of the drugs, the Government focused on her possession of a key to the house, her attempted entry using the key, the presence of her shorts and switchblade within the house, her statement that she was in her “own house,” and the fact that the house was a “cut house” where large quantities of drugs were cut and distributed. Id. at 680-81. Baltimore responded that there was no evidence of her fingerprints on any of the drugs, that her possessions (the shorts and switchblade) were in a room in which no drugs were found, that she was arrested before entering the house, and that Brown was the sole owner of the property. Id. at 681 We concluded “while the evidence may be sufficient to show that Baltimore was residing at the Brown home and that she knew that drugs were in the house, the evidence is not sufficient to support a finding that she exercised dominion and control over the drugs.” Id. at 681.
Importantly, this Court rejected the Government’s contention that the Eighth Circuit’s decision in United States v. Brett, 872 F.2d 1365 (8th Cir.1989), controlled the case. In Brett, the Eighth Circuit affirmed the defendant’s conviction for possessing cocaine with intent to distribute. The police obtained a search warrant for the house after an undercover officer purchased crack from individuals at the house. Brett, 872 F.2d at 1367. As officers approached, the appellant ran from the house and was apprehended. He was arrested along with two individuals who remained inside. Id. at 1367-68. The man who ran from the house had nearly four thousand *248 dollars and a key that opened the lock on the house on his person. Id. The police uncovered drugs in what the court called a “fortified drug house” — a house containing no refrigerator, stove, food, or clothing, but with windows and doors reinforced with wood, metal brackets, and extra locks. Id. at 1368. The Eighth Circuit affirmed the conviction of the defendant who possessed the key to the house concluding that “possession of the key to the front door of the house is sufficient evidence to prove the ‘knowing possession’ element [of the drug charge].” Id. at 1369.
In Brown, this Court did not apply Brett because “[possession of the key to the crack house would indicate a much greater likelihood that the defendant was involved with the drugs found therein than Baltimore’s possession of a key to Brown’s home, which was used not only for drug-related activity but also a residence.” Brown, 3 F.3d at 683-84. This Court further distinguished Brett, because the circumstances underlying the arrest in Brett were far more inculpatory than the circumstances in Brown. See id. at 684 (“[T]he appellant in Brett was found fleeing from the crack house when the police arrived; he falsely identified himself at the time of arrest; and he was found at the time of his arrest with $3,746 in cash in his possession, but would not explain how he had obtained the money. In short, his possession of the key to the house was only one among a number of factors all of which supported the conclusion that he knew about and had dominion and control over the drugs found in the crack house.” (citations omitted)). Unlike Brett, therefore, we found that “even if [Baltimore] knew that the drugs were in the house, the evidence [did] not support a finding that she had dominion and control over th[e] drugs.” Id. at 682. Therefore we found insufficient evidence to support the jury’s finding that Baltimore possessed the drugs, and, accordingly, overturned her conviction on the count.
B. United States v. Jenkins
In Jenkins, this Court also reversed the district court’s order denying the defendant’s motion for judgment of acquittal. There, Philadelphia police officers responded to a call that gunshots were fired near an apartment building. Jenkins, 90 F.3d at 816. The police pursued the suspect through the building into an apartment, and when they entered the apartment found two men, one of whom was Jenkins, seated on a couch. Id. The two men, who were wearing only boxer shorts and t-shirts, were seated behind a coffee table with “three bags of white powder containing a total of 55.3 grams of cocaine and 42 grams of non-cocaine white powder, two triple-beam scales, two loaded .38 caliber revolvers, small ziplock-style bags, clear plastic vials, and numerous red caps.” Id.
No evidence was provided that either man had worked with the cocaine, as no residue was found on them or the scales, and neither man tried to destroy any of the contraband in the room. Id. at 816-17. Jenkins was not a resident of the apartment, but was described by the manager of the apartment building as someone who was “in and out” of the apartment. Id. Jenkins was charged and convicted for possessing cocaine with intent to distribute. Id. at 817. His motion for judgment of acquittal was denied. Id.
Jenkins appealed, and the issue before this Court was whether sufficient evidence existed to establish constructive possession. Id. This Court, relying on Brown, held sufficient evidence did not exist. Although the Government argued that Brown was distinguishable on the grounds that the defendant’s shorts were not found in the same room as the drugs whereas *249 Jenkins was found directly next to the drugs, we rejected this argument. As we stated, “[i]t is a serious misreading of [Brown] to conclude that the degree of proximity of [the defendant] or her clothing to the drugs was a controlling factor.” Id. at 819. Expanding on a point not discussed in Brown, this Court stated that because the defendant, Ama Baltimore, lived in the house it was “virtually certain that she regularly would have entered the kitchen and bedroom, the rooms in which the drugs were found.” Id. Yet, because residence in the house is itself insufficient to prove dominion and control over the drugs, the visits to the rooms did not matter as long as they did not pertain to the drugs. Id.
Accordingly, we held in Jenkins that “[a] reasonable jury may not infer dominion and control beyond a reasonable doubt from the defendant’s physical distance from the drugs alone.” Id. at 820. Mere proximity is thus not enough to establish dominion and control. See id. at 820 (“Some additional evidence of dominion and control is required before a finding of constructive possession can be made beyond a reasonable doubt.”). Jenkins’s attire, which indicated he had been in the apartment for a long time or was planning to stay, and the presence of the two scales was not enough to show dominion and control given that Jenkins’s fingerprints were not found on the contraband items, the contraband was not being used, and no cocaine residue was present on Jenkins. Id. This Court accordingly found insufficient evidence to establish constructive possession, and overturned the jury’s conviction of Jenkins.
C. District Court’s Opinion
After Bates was convicted by the jury, he filed a motion for judgment of acquittal under Fed.R.Crim.P. 29.[1] Bates’s focus is on count I, possession with intent to distribute 100 grams or more of heroin.[2] It was undisputed that Bates lacked actual possession of the heroin, so the issue was whether Bates constructively possessed the heroin. This Court has stated that:
“Constructive possession exists if an individual knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons. Constructive possession necessarily requires both dominion and control over an object and knowledge of that object’s existence.”
United States v. Cunningham, 517 F.3d 175, 178 (3d Cir.2008) (quoting United States v. Iafelice, 978 F.2d 92, 96 (3d Cir.1992)).
The District Court concluded that the Government’s evidence in this case is “far stronger than the evidence in Brown and Jenkins.” United States v. Bates, No. 09-cr-33-1, 2010 WL 3421118, at *6 (E.D.Pa. Aug.26, 2010). In reaching this conclusion the District Court relied upon the following facts: (1) Bates previously resided at 1474 Lardner Street; (2) Bates possessed a key to the building; (3) Bates exited 1474 Lardner Street and immediately proceeded to engage in a drug transaction; (4) Bates was arrested across the street from 1474 Lardner Street, and the officers found twelve packets of crack cocaine and a firearm on him at the time of his arrest; (5) at the time of the arrest, 1474 Lardner *250 Street was a “crack house” where no one resided; and (6) expert testimony that, because the street value of the drugs exceeded $200,000, only trusted members of the drug distribution group would have access to the building.
The District Court elaborated on the significance of three of these facts. First, the District Court stated that a jury could have reasonably considered that on the date of arrest, 1474 Lardner Street was a “crack house, that is, a dwelling used exclusively for the use and distribution of drugs.” Id. at *7 (citing Brown, 3 F.3d at 683). This conclusion was premised on the fact that no one resided in 1474 Lardner Street at the time.
Second, because of the expert testimony that the large amount of heroin seized would be kept in a secure location to which only members of the drug organization would have access, the fact that Bates possessed a key to the residence held extra significance. The key indicated that Bates “could enter the building unimpeded and had unfettered access to its contents.” Id. Thus, the District Court concluded the Government was “entitled to the inference that because Bates had a key to this ‘crack house’ where large quantities of heroin were kept, the drug organization trusted him with unsupervised access to the heroin.” Id.
Third, and finally, the District Court stated the jury could have reasonably considered the evidence that Bates engaged in drug trafficking on the block where 1474 Lardner Street is located.[3] This was based upon his immediate exit from the house before selling crack cocaine to the Cl, and his arrest directly across from 1474 Lardner Street where he was found to have twelve bags of crack cocaine and a loaded 9mm firearm.
D. The District Court’s Order Erred in Finding Sufficient Evidence to Establish Constructive Possession
We believe the District Court improperly distinguished Brovm and Jenkins from the facts of this case. A proper reading of our precedent makes clear that the facts are insufficient to support the jury’s conviction.
First, the District Court labeled 1474 Lardner Street a “crack house.” This distinction, if appropriate, would strengthen the District Court’s reasoning. Under dicta in Brown, and the Eighth Circuit decision in Brett, if 1474 Lardner Street is viewed as a “crack house” then access to the house helps the Government demonstrate dominion and control over the contraband inside. The Government argues that in reviewing this case in the light most favorable to it, we should conclude that a finding of dominion and control is proper because of Bates’s possession of the key to 1474 Lardner Street, which it considers a “crack house” or a “stash house.”
But this case presents a factual situation very different from Brett; Bates previously lived in the home and retained his key to the residence. Bates’s possession of the key and his one entrance to the house are thus less inculpatory than the key and access in Brett. Moreover, the “crack house” in Brett was fortified with reinforced doors and windows and was not *251 used as a residence. The house at 1474 Lardner Street was not fortified, was used as a residence three weeks earlier, and new tenants were scheduled to move in only three weeks later. In Brett, the only reason to have a key that gave access to the fortified “crack house” was the drugs contained therein. The fortified “crack house” designation created a proper inference, when considered along with the other facts of Brett,[4] that the key and access demonstrated dominion and control over the drugs therein. In this case, 1474 Lardner Street lacks the fortified features present in Brett, and the arrest of Bates lacks the incriminating facts surrounding the arrest in Brett, so it is not proper for a jury to conclude that Bates’s possession of the key and entrance into 1474 Lardner Street on one occasion provide the evidence of dominion and control.
Second, the District Court erred when it stated that because Bates possessed the key, he “could enter the building unimpeded and had unfettered access to its contents,” and therefore had dominion and control of the narcotics. Bates, 2010 WL 3421118, at *7. This statement ignores the holding in Brovm that the possession of a key cannot provide substantial evidence to show dominion and control. Brovm clearly establishes that having “unfettered access” to the house and its contents, absent other evidence, is not enough to support a finding that the defendant had dominion and control over the drugs contained therein. Indeed, the defendant in Brovm lived in the home, kept possessions there, would have been near the drugs frequently because they were in the kitchen and bedrooms, and was trying to access the home while drugs were inside. Yet even that evidence was insufficient. Here, the evidence only establishes that Bates was in the 1474 Lardner Street residence once since he moved out. Furthermore, there is no evidence Bates kept possessions in the house, no evidence he was in the house when the heroin was in the house, and no evidence he was in close proximity to the drugs. This evidence then must also be insufficient. Further, Jenkins makes clear that even if one is sitting directly next to drugs and drug paraphernalia and is aware of their presence, more evidence demonstrating dominion and control must be shown. Jenkins, 90 F.3d at 820 (“Some additional evidence of dominion and control is required before a finding of constructive possession can be made beyond a reasonable doubt.”).
Brovm makes clear that living in a residence, having access to the residence, and having a key to the residence, are together insufficient to establish dominion and control. Something more is needed. The Government proposes this Court should hold that the key and access in this case are sufficient to show that Bates had access to the drugs, as well as permission from unidentified persons to exert dominion and control over them. We do not accept this proposed conclusion, however, because there is no evidence showing that the key and access to the home were given, or approved of, by some unidentified party, and were intended to give Bates dominion and control over the heroin. Holding otherwise would circumvent Brown. In Brovm, the residence, access, and key were insufficient to establish dominion and control, so here the access and *252 key, without other evidence connecting Bates to the heroin, cannot be sufficient to establish dominion and control.
While the Government is entitled to have the evidence viewed in a light most favorable to it, that does not mean we must view the key as proof that Bates exercised dominion and control over the heroin, particularly when the Government has offered no evidence to prove such a conclusion. According to Callaghan’s expert testimony, Bates’s access to the house, via the key, shows he was part of what must have been a larger organization. But that is the sole evidence the government has to establish dominion and control of the drugs in the upstairs bedroom, and it is insufficient under Brown and Jenkins. Bates’s fingerprints were not found in the room containing the drugs, there is no evidence that he was in the room containing the drugs, no evidence he knew of the heroin, and the packaging Bates possessed for the crack was different than the packaging discovered with the heroin. Further, a Hispanic name was on the credit card found in the room with the drugs, and the writing in the tally book was largely in Spanish. Neither of these facts implicates Bates. Lastly, nothing has been shown that whoever placed the heroin in 1474 Lardner Street explicitly gave Bates permission to enter the home in which he used to reside using the key he retained from his residence there.
Comparing the facts in this case to Jenkins highlights the dearth of evidence regarding access to the heroin that the key allegedly provided. Unlike Jenkins, Bates was never found in the room containing the drugs. Like Jenkins, there was no heroin residue on Bates’s clothes or person. In Jenkins, this Court concluded the evidence was insufficient to demonstrate dominion and control over the narcotics; by extension a similar conclusion is warranted under the facts in this case.
Finally, the District Court gave too much weight to the fact that Bates was engaged in drug trafficking on the same block as 1474 Lardner Street. Bates’s activities do not connect him to the heroin because he was dealing crack. The possession of crack also does not show any connection to the packaging paraphernalia found in 1474 Lardner Street since the packaging of the crack did not match the packaging discovered in the house. This is not to say it has no significance; it demonstrates that Bates possessed illegal drugs with the intent to distribute them, a crime for which Bates was convicted. But the Government is not entitled to the inference that because Bates was dealing crack in the area, he must have also been involved in trafficking heroin. The Government can place Bates in 1474 Lardner Street on the day before his arrest, but it has shown nothing further. It has not demonstrated that his time inside the house was related to his sale of crack, since no crack, and none of Bates’s possessions were found within the house. Additionally, it cannot show that his sale of crack outside the house was related to the storage of heroin inside the house, since nothing discovered with the heroin and paraphernalia can be traced to Bates.[5]
*253 The Government’s insistence that it is entitled to have the record reviewed in a light most favorable to it is undoubtedly true. The Government, however, seeks not only reasonable inferences, but speculative conclusions that are inappropriate. The line between reasonable inferences and speculation is narrow and tough to define. If more evidence was provided connecting Bates to the heroin then the Government’s argument that he exercised dominion and control could cross the line and no longer be speculative. But Brown and Jenkins dictate that the facts of this case do not demonstrate substantial evidence of dominion and control to uphold the jury’s decision.
The District Court erred in distinguishing this case from Brown and Jenkins in the ways discussed above. The evidence, viewed in the light most favorable to the Government, cannot support a finding that Bates had dominion and control over the heroin. Accordingly, this Court will reverse Bates’s conviction on count I.
Y. Conclusion
For the foregoing reasons, we will affirm Bates’s conviction on counts II and IV and reverse his conviction on count I. We will vacate his sentence and remand to the District Court for sentencing proceedings consistent with this opinion.

. Bates also filed a motion for a new trial under Fed.R.Crim.P. 33, which was denied. Bates does not appeal the District Court's decision on this ground.

. The required elements for possession of a controlled substance with intent to distribute are: (1) knowing or intentional (2) possession (3) with intent to distribute (4) a controlled substance. United States v. Lacy, 446 F.3d 448, 454 (3d Cir.2006).

. The District Court correctly stated that although the appellant was acquitted on count III, it is proper to consider all evidence presented by the government regardless of how the jury finds on some counts. See United States v. Powell, 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ("This [sufficiency-of-the-evidence] review should be independent of the jury's determination that evidence on another count was insufficient."); Virgin Islands v. Martinez, 620 F.3d 321, 332-33 (3d Cir.2010) ("In sum, the jury’s acquittal on the other counts 'is irrelevant to our singular focus on and determination of whether the evidence adduced at trial supports’ the conviction on Count Three.”).

. "[T]he appellant in Brett was found fleeing from the crack house when the police arrived; he falsely identified himself at the time of arrest; and he was found at the time of his arrest with $3,746 in cash in his possession, but would not explain how he had obtained the money. In short, his possession of the key to the house was only one among a number of factors all of which supported the conclusion that he knew about and had dominion and control over the drugs found in the crack house.” Brown, 3 F.3d at 684 (internal citations omitted).

. The District Court did not address the Government’s theory of conviction that it raises in this appeal — that the jury concluded the appellant was armed because he was guarding 1474 Lardner Street. No evidence has been provided that connects the handgun on Bates to the heroin in 1474 Lardner Street. The only facts the Government can point to regarding this argument is that Bates was near the house the day before his arrest, was there a "short time” according to Toomer's testimony, and then again on the day of his arrest when the officers arrived to execute a search warrant on 1474 Lardner Street. We must make all reasonable inferences in the Government's favor, but to find that these facts alone provide substantial evidence from which a *253 jury could conclude Bates was an armed guard is to cross the line from inference to pure speculation. Accordingly the Government is not entitled to the inference that the gun represented Bates's assignment to protect the contents of 1474 Lardner Street or that his presence was "surveillance” intended to protect the drugs.